# 22-1115-cr

To be argued by:
SARAH BAUMGARTEL

_____
_____

United States Court of Appeals
For the Second Circuit

_____

Docket No. 22-1115-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

-against-

BRIAN MAIORANA,

*Defendant-Appellant.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

_____

**BRIEF FOR DEFENDANT-APPELLANT BRIAN MAIORANA**

_____

Federal Defenders of New York, Inc.
Appeals Bureau
52 Duane Street, 10th Floor
New York, New York 10007
(212) 417-8772
Sarah_Baumgartel@fd.org

Sarah Baumgartel,
*Of Counsel*

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION ........................................................1

QUESTIONS PRESENTED ..................................................................1

STATEMENT OF THE CASE ...............................................................1

STATEMENT OF FACTS .....................................................................3

    A. Background ................................................................................3

    B. Maiorana's Offense and Conviction.......................................5

    C. Maiorana's Sentencing ...........................................................7

    D. The Written Judgment..........................................................12

SUMMARY OF ARGUMENT .............................................................15

STANDARD OF REVIEW ...................................................................17

ARGUMENT........................................................................................17

I.    Defendants have a constitutional right to be present at sentencing, meaning that if a court's oral and written judgments conflict, the oral judgment controls. ...................................17

II.   The Court should vacate the provision of the written judgment requiring Maiorana to contribute to the cost of mental health treatment, which conflicts with the oral sentence. ................................19

III.  The Court should vacate the written judgment's 13 "standard" conditions of supervised release and remand for resentencing.........20

IV.  *United States v. Truscello* should not save the "standard" conditions imposed in Maiorana's written judgment..........................25

    A. Maiorana's written judgment imposes conditions that go beyond basic administrative requirements essential to supervised release. ..................................................................................26

    B. The Court should require district courts to orally impose every non-mandatory condition of supervised release.....................29

CONCLUSION ....................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Gall v. United States*,
  552 U.S. 38 (2007) ................................................................ 21

*United States v. A-Abras, Inc.*,
  185 F.3d 26 (2d Cir. 1999) ......................................... 17, 18

*United States v. Anstice*,
  930 F.3d 907 (7th Cir. 2019) ........................................... 31

*United States v. Asuncion-Pimental*,
  290 F.3d 91 (2d Cir. 2002) ............................................... 27

*United States v. Bickart*,
  825 F.3d 832 (7th Cir. 2016) ........................................... 24

*United States v. Boles*,
  914 F.3d 95 (2d Cir. 2019) .................................... 17, 23, 24

*United States v. Brown*,
  653 F. App'x 50 (2d Cir. 2016) ........................................ 21

*United States v. Burden*,
  860 F.3d 45 (2d Cir. 2017) ............................................... 19

*United States v. Decker*,
  838 F. App'x 640 (2d Cir. 2021) ...................................... 24

*United States v. Diggles*,
  957 F.3d 551 (5th Cir. 2020) .......................................30-31

*United States v. Marquez*,
  506 F.2d 620 (2d Cir. 1974) ............................................. 18

*United States v. Matta*,
  777 F.3d 116 (2d Cir. 2015) ............................................. 22

*United States v. Matthews*,
  -- F.4th --, 2022 WL 4074408 (D.C. Cir. Sep. 6, 2022) ...............29-30

ii

*United States v. McLaurin,*
  731 F.3d 258 (2d Cir. 2013) ....................................................... 17, 22

*United States v. Reeves,*
  591 F.3d 77 (2d Cir. 2010) ............................................................... 21

*United States v. Rogers,*
  961 F.3d 291 (4th Cir. 2020) .......................................................... 30

*United States v. Rosario,*
  386 F.3d 166 (2d Cir. 2004) ..................................................... 18, 19

*United States v. Thomas,*
  299 F.3d 150 (2d Cir. 2002) ..............................................27-28, 31-32

*United States v. Truscello,*
  168 F.3d 61 (2d Cir. 1999) ..................................................... *passim*

*United States v. Washington,*
  904 F.3d 204 (2d Cir. 2018) ..................................................... 17, 18

**Statutes**

18 U.S.C. § 875(c) ........................................................................... 2

18 U.S.C. § 922(g) ................................................................. *passim*

18 U.S.C. § 3231 ............................................................................. 1

18 U.S.C. § 3553(a) ................................................................. 10, 21

18 U.S.C. § 3583(d) ................................................................. 21, 29

28 U.S.C. § 1291 ............................................................................. 1

## STATEMENT OF JURISDICTION

This is an appeal from judgment imposed on May 18, 2022, and entered on May 23, 2022, in the United States District Court for the Eastern District of New York (Block, J.). Appellant Brian Maiorana's notice of appeal was filed on May 19, 2022. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291.

## QUESTIONS PRESENTED

1. Considering a defendant's right to be present at sentencing, should the Court vacate conditions of supervised release imposed in Maiorana's written judgment that conflict with, or were not included, in the district court's oral sentence, including certain "standard" conditions?

2. Should this Court hold that all non-mandatory conditions of supervised release must be orally pronounced at sentencing, as the Fourth, Fifth, Seventh, and D.C. Circuits have held?

## STATEMENT OF THE CASE

A grand jury in the Eastern District of New York returned an indictment charging Brian Maiorana with (i) possession of a firearm and ammunition following a felony conviction, in violation of 18 U.S.C.

1

§ 922(g)(1) (Count One); (ii) possession of ammunition following a felony

conviction, in violation of 18 U.S.C. § 922(g)(1) (Count Two); and (iii)

interstate threats, in violation of 18 U.S.C. § 875(c) (Count Three).[1] A.10-11.

On April 26, 2021, Maiorana pled guilty to Count One, pursuant to a

written plea agreement with the government. A.17-25. He admitted that, in

November 2020, he knowingly possessed a gun in his home in Staten Island,

after previously being convicted of a felony. A.65.

On May 18, 2022, the district court (Block, J.) sentenced Maiorana to 36

months in prison and three years of supervised release with numerous

conditions. A.7-8. Maiorana is currently serving his prison sentence and has

a projected release date of June 1, 2023.

---

[1] The appendix is cited "A." The Presentence Investigation Report is cited
"PSR." The PSR's sentencing recommendation addendum dated December
6, 2021, is cited "PSR Add." Entries on the district court docket, *United States
v. Brian Maiorana*, No. 20 Cr. 519 (FB), are cited "DE."

## STATEMENT OF FACTS

Brian Maiorana, now 56 years old, became upset over the 2020 presidential election, the direction of this country, and what he perceived as "anarchy on the streets across the nation." A.102. Between September and November 2020, he made social media posts about these subjects that the FBI viewed as threatening. Agents obtained a search warrant for Maiorana's home, where they found a gun and ammunition, which his single prior felony conviction prevented him from lawfully possessing. Maiorana pled guilty to violating 18 U.S.C. § 922(g)(1), and was sentenced to three years in prison and three years of supervised release. Maiorana's written plea agreement prevents him from challenging his prison term, but he brings this appeal regarding certain conditions of his supervised release.

### A. Background

Maiorana worked hard to overcome a childhood marred by poverty and abuse, as detailed in his presentence report. PSR ¶¶ 36, 38. His parents divorced when he was young and his mother struggled to provide for her two sons, working first as a telephone operator and then as a public-school janitor. PSR ¶ 33.

Both Maiorana and his brother sought a better life by joining the Navy. Maiorana enlisted at the age of 19, serving as an active-duty member for four years and in the reserves for an additional three years. PSR ¶ 66. He mainly worked as a machinist and boiler technician for a unit that supported aircraft carriers. *Id.* He was honorably discharged in 1993. *Id.* Sadly, around this time, Maiorana's mother died of cancer. PSR ¶ 38.

After Maiorana left the Navy, he held different jobs, including working as a utility operator; a mechanic; and a plant technician for National Grid. PSR ¶¶ 64-65. Most recently before his arrest, he worked as a maintenance engineer servicing conveyor equipment at a factory. PSR ¶ 62.

Maiorana learned about and used firearms as part of his military service and, while living in New York, obtained a pistol permit. PSR ¶ 7. However, he later surrendered this permit and, in 2007, sustained a felony conviction in Pennsylvania. PSR ¶ 26. Maiorana completed his sentence for this offense and had no further issues with the law.

Maiorana married in 1988 and he and his wife had three children. PSR ¶¶ 39-40. The couple later divorced. *Id.* By 2020, Maiorana was living by

4

himself in Staten Island. From 2018 through the beginning of 2020, he worked for National Grid. PSR ¶ 64. When the COVID-19 pandemic hit, he was laid off and could not immediately find another job. PSR ¶ 64. He also has several medical conditions that require ongoing treatment and sometimes affect his ability to work. PSR ¶¶ 50-53.

### B. Maiorana's Offense and Conviction

Like millions of other people in this country, Maiorana became engrossed and consumed by the 2020 election. He supported Donald Trump and genuinely believed that the election was being fraudulently stolen. He was also affected by news reports of widespread protests and unrest throughout the country. He became upset and made belligerent posts on social media about the election and surrounding protests and upheaval. *See* PSR ¶¶ 4-5. For example, he posted online that "carnage needs to come in the form of extermination of anyone that claims to be a democrat" and that it had "come to the point where pipe bombs need to be thrown into these mobs of potentially non violent violent protestors." PSR ¶ 4. On November 8, 2020, he wrote online, "[s]oap box, Ballot box … that was fraudulently

5

stolen from us, Now Cartridge Box," and that "[t]he time has now past for patriots to stop being on the defensive … defensive action is a position of weakness. We must take offensive action starting now." *Id.*

As one of Maiorana's (now adult) children later explained, Maiorana sometimes gets angry and "says things without thinking it fully through" because he "does not have a filter." PSR ¶ 41. However, no one in his family has ever known him to act violently. *Id.*

This sentiment was shared by Maiorana's current partner of several years, who knows him as a "nice" and "caring" person, who tended to her through her own battle with cancer. PSR ¶¶ 42-43.

Maiorana's social media posts led the government to investigate him and obtain a search warrant for his home. Agents executed this warrant on November 10, 2020, and found a pistol and ammunition. PSR ¶ 9. Maiorana was charged in federal court and detained without bail. A.5.

In April 2021, Maiorana pled guilty to unlawfully possessing a gun and ammunition, in violation of 18 U.S.C. § 922(g)(1). A.25. The parties entered a written plea agreement, which estimated an advisory Sentencing

Guidelines range of 12 to 18 months. A.17-20. However, the government gave notice that it intended "to seek an above-Guidelines sentence." A.19.

The parties' plea agreement contained a limited waiver of appellate rights, whereby Maiorana agreed "not to file an appeal or otherwise challenge … the conviction or sentence in the event that the Court imposes a term of imprisonment of 36 months or below." A.19. The agreement also waives Maiorana's right to argue on appeal that "(1) the statute(s) to which [he] is pleading guilty is unconstitutional and (2) the admitted conduct does not fall within the scope of the statute(s)." *Id.* The appellate waiver does not purport to limit Maiorana's right to appeal any term of supervised release or the conditions of supervised release.

## C. Maiorana's Sentencing

By the time of his sentencing in May 2022, Maiorana had already served 18 months in jail. A.7-8. Prior to the sentencing hearing, the government sent a letter urging the district court to sentence Maiorana to an above-Guidelines sentence of 36 months in prison, because of his "violent" statements on "social media," talking about "kill[ing]" politicians and

7

protestors. DE 18 at 1-3. The government argued that the "severity" of this conduct was not fully captured by the Guidelines. *Id.*

Maiorana's counsel requested a sentence of time served, effectively the top of his Guidelines. DE 19 at 1. Counsel explained that Maiorana's gun possession related to a misguided but sincere belief that he needed to protect himself and his home. *Id.* Counsel emphasized that Maiorana's social media posts were not true threats, either legally or in Maiorana's own mind, DE 19 at 2-3, and that their tone (and Maiorana's sense of being threatened) was partially a product of the virulent turn of political discourse in America, where public figures regularly used "violent language," "menacing political speech," and "charged words and imagery." DE 19 at 3 (citing Lisa Lerer & Astead W. Herndon, "Menace Enters the Republican Mainstream," *The New York Times* (Nov. 12, 2021), and Catie Edmondson & Mark Walker, "One Menacing Call After Another: Threats Against Lawmakers Surge," *The New York Times* (Feb. 9, 2022)). Counsel also emphasized the significant punishment Maiorana had already experienced, particularly as a result of being in jail at the MDC Brooklyn during the COVID pandemic. DE 19 at 5.

Neither the government or defense sentencing submission discussed supervised release after prison. In its presentence report addendum, the Probation Department recommended two years of supervised release with certain "special" conditions, including a physical and electronic search condition; a requirement to report "electronic communications service accounts"; a mental health evaluation and treatment; and restrictions on Maiorana's associations. *See* PSR Add. The addendum did not recommend or list any other proposed conditions of supervised release, including, for example, any of the "standard" conditions listed in U.S.S.G. § 5D1.3(c).

At sentencing, the district court noted the Sentencing Guidelines range and Probation's sentencing recommendation of two years in prison followed by two years of supervised release. A.72, 82. In response to the government and defense arguments, the court recognized that Maiorana had not been convicted of any criminal conduct related to his social media posts and disclaimed any belief that a criminal charge would be "viable," A.76-77, noting "nobody has been threatened" and Maiorana's posts did not take the "shape of a particular threat against a particular" person, A.79. The court

9

also recognized that Maiorana was "not the only person in the country that has these thoughts," and that "[w]e have a very challenged type of dynamic in our country, a very divisive dynamic." A.79. Nonetheless, the court agreed with the government's assertion that it could consider these statements under 18 U.S.C. § 3553(a), to the extent they bore on Maiorana's potential dangerousness. A.83-85.

Throughout sentencing, the court focused on the "special" conditions of supervised release recommended by the Probation Department because, according to the court, "regardless of what the custodial sentence will be," Maiorana would be out of prison "fairly soon," and the court wanted to "monitor[] his behavior thereafter" so that his "verbal activity" would not "translate into anything of a physical or harmful nature to people." A.72-73; *see also* A.85 ("I'm really concerned about … these conditions of supervised release ... to protect the public, we have to really … have a close look at how he's going to behave when he's released from incarceration.").

The court specifically discussed the special conditions recommended in Probation's addendum, including the physical and electronic search

condition, the obligation to report electronic accounts, and mental health treatment. *See* A.85-87. The defense "agree[d]" to all of the listed special conditions. A.94-96.

With respect to mental health treatment, the court made an oral modification to Probation's recommendation, specifying, "I don't want him [Maiorana] to contribute to the cost of that. There are these financial burdens that are being imposed here. I'm not interested in that." A.87.

Towards the end of the hearing, Maiorana personally addressed the court. He expressed his regret for the things that he had said, which he described as "hateful and out of character." A.33. He also explained that he had a gun in his home because he was fearful "over the direction that the country was headed," and fearful that he was witnessing "anarchy on the streets across the nation." A.102. He recognized that he had not acted in a way that was "becoming of an honorably discharged veteran" of the Navy and said that he was "deeply sorry" for his actions. A.103.

After Maiorana spoke, the court announced that it was "going to go along with the Government" and "impose 36 months." A.106. The court said

11

it was "erring on the side of protecting the public as much as we can" and "sending a message" that "these types of things will not go unpunished severely." A.106. The court added, "it will be 36 months followed by three years of supervised release with all of these conditions that I articulated before. There will be general conditions of supervised release as well, which will be part and parcel of the judgment." A.106.

## D. The Written Judgment

Maiorana's sentencing took place on May 18, 2022 and the written judgment was filed on May 23, 2022. A.7-8.

Maiorana's written judgment lists numerous conditions of supervised release. It includes conditions mandated by statute. A.110. It also includes the "special" conditions the district court discussed at sentencing. A.111. With respect to the mental health treatment condition, the judgment states that the "defendant shall contribute to the cost of services rendered … in an amount to be determined by the Probation Department." A.111.

The judgment further includes 13 "standard" conditions:

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of

12

the time you were sentenced, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4.  You must answer truthfully the questions asked by your probation officer.

5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation

13

officer within 72 hours of becoming aware of a change or
expected change.

8. You must not communicate or interact with someone you
know is engaged in criminal activity. If you know someone has
been convicted of a felony, you must not knowingly
communicate or interact with that person without first getting
the permission of the probation officer.

9. If you are arrested or questioned by a law enforcement officer,
you must notify the probation officer within 72 hours.

10. You must not own, possess, or have access to a firearm,
ammunition, destructive device, or dangerous weapon (i.e.,
anything that was designed, or was modified for, the specific
purpose of causing bodily injury or death to another person
such as nunchakus or tasers).

11. You must not act or make any agreement with a law
enforcement agency to act as a confidential human source or
informant without first getting the permission of the court.

12. If the probation officer determines base [sic] upon your
criminal history personnel [sic] history and characteristic, and
nature and circumstances of your offense, you pose a risk to
another person (including an organization), the probation
officer, with prior approval of the Court, may require you to
notify the person about the risk and you must comply with that
instruction. The probation officer may contact the person and
confirm that you have notified the person about the risk.

13. You must follow the instructions of the probation officer
related to the conditions of supervision.

A.112. These "standard" conditions were not discussed or imposed by the

district court during the sentencing hearing.

14

Maiorana is currently serving his prison sentence. According to the Bureau of Prisons, he is scheduled for release on June 1, 2023.

## SUMMARY OF ARGUMENT

Criminal defendants have a constitutional right to be present at sentencing, meaning that any conflict between a court's oral pronouncement of sentence and a later written judgment must be resolved in favor of the oral sentence. Here the district court's oral and written judgments conflict regarding the terms of Maiorana's supervised release.

First, the written judgment mistakenly requires Maiorana to contribute to the cost of his court-ordered mental health treatment, despite the court's oral directive to the contrary. This conflicting provision should be vacated and the written judgment should be corrected to specify that Maiorana is not required to contribute to the cost of mental health treatment.

Second, the written judgment imposes numerous "standard" conditions of supervised release that were not orally imposed at the sentencing hearing or justified on the record. Certain of these conditions, including a requirement that Maiorana work full time unless excused by his

15

probation officer and a risk notification requirement, delegate excessive authority to the Probation Department and are vague and overbroad.

Further, the Court should not rely on *United States v. Truscello*, 168 F.3d 61 (2d Cir. 1999), to rule that these conditions are implicit in every supervised release term and therefore do not need to be specifically imposed or orally pronounced at sentencing. Although labeled "standard," several of the conditions imposed in Maiorana's written judgment go well beyond conditions that are essential to the basic functioning of supervised release. Therefore, this Court should hold that the conditions need to be specifically imposed by a district court during its oral pronouncement of sentence.

Alternatively, this Court should clarify its law in this area and hold that all *non-mandatory* conditions of supervised release must be orally pronounced at sentencing. This would bring this Circuit's law in line with the law of the Fourth, Fifth, Seventh, and D.C. Circuits.

16

## STANDARD OF REVIEW

A district court's imposition of supervised release conditions is reviewed for abuse of discretion. *United States v. Boles*, 914 F.3d 95, 111 (2d Cir. 2019). When a challenge to a condition "presents an issue of law," this Court reviews "*de novo*, bearing in mind that any error of law necessarily constitutes an abuse of discretion." *Id.* (quoting *United States v. McLaurin*, 731 F.3d 258 (2d Cir. 2013)).

Further, when an appeal concerns a sentence term "and the defendant lacked prior notice in the district court that the term would be imposed, we will review the issue *de novo* even if the defendant failed to raise an objection in the district court." *United States v. Washington*, 904 F.3d 204, 207 (2d Cir. 2018) (exercising *de novo* review of supervised release condition that was not orally imposed, but was included in written judgment).

## ARGUMENT

**I.    Defendants have a constitutional right to be present at sentencing, meaning that if a court's oral and written judgments conflict, the oral judgment controls.**

Defendants have a constitutional right to be present at sentencing. *United States v. A-Abras, Inc.*, 185 F.3d 26, 29 (2d Cir. 1999). This right is

17

codified in Federal Rule of Criminal Procedure 43(a)(3). In light of this right, the "oral sentence" "constitutes the judgment of the court," and the written judgment is "nothing more than mere evidence of the sentence imposed orally." *United States v. Marquez*, 506 F.2d 620, 622 (2d Cir. 1974). Thus, where an oral sentence conflicts with a written judgment, the "right of a defendant to be present at sentencing dictates that the oral pronouncement of sentence must control." *A-Abras, Inc.*, 185 F.3d at 29.

This general rule applies to conditions of supervised release: if a court's written judgment conflicts with its oral judgment regarding supervised release conditions, or imposes additional conditions, the oral judgment controls and the conflicting written conditions must be modified or stricken. *See, e.g.*, *United States v. Rosario*, 386 F.3d 166, 168-69 (2d Cir. 2004); *Washington*, 904 F.3d at 208.

## II. The Court should vacate the provision of the written judgment requiring Maiorana to contribute to the cost of mental health treatment, which conflicts with the oral sentence.

A special condition of Maiorana's supervised release requires him to participate in a mental health evaluation and treatment.[2] At the sentencing hearing, the court explicitly stated that it did not want Maiorana to be required to contribute to the cost of this treatment, because it did not want to impose that "financial burden[]" on him. A.87. However, the written judgment erroneously requires Maiorana to "contribute to the cost" of mental health treatment "in an amount to be determined by the Probation Department." A.111. This directly conflicts with the court's oral sentence. As a result, the written judgment's provision requiring Maiorana to contribute to the cost of a mental health evaluation and treatment should be vacated. *See, e.g.*, *Rosario*, 386 F.3d at 169 (ordering deletion of portion of written judgment that conflicted with oral pronouncement of sentence and

---

[2] The parties' plea agreement does not address supervised release or the conditions of supervised release. Thus, the agreement's appellate waiver does not prevent Maiorana from appealing conditions of his supervised release. *See, e.g.*, *United States v. Burden*, 860 F.3d 45, 53-55 (2d Cir. 2017).

19

burdened defendant). The written judgment should be corrected to clarify that Maiorana is not required to contribute to the cost of treatment.

### III.   The Court should vacate the written judgment's 13 "standard" conditions of supervised release and remand for resentencing.

This Court should also vacate the 13 "standard" conditions of supervision that are included in Maiorana's written judgment, but which were not orally imposed. *See* A.112 (listing conditions). The Court should remand for resentencing so the district court can determine, and explain on the record, which of these conditions is necessary for Maiorana, and properly impose those conditions in his presence.

The additional supervised release conditions in Maiorana's written judgment are numerous and burdensome, imposing substantial restrictions on Maiorana's liberty: among other things, they restrict Maiorana's right to travel; they obligate Maiorana to allow a probation officer to visit him "at any time" at "home or elsewhere"; they require Maiorana to work full time unless excused by his probation officer; they limit who Maiorana may associate with; and they allow the probation officer to require Maiorana to notify others that he "pose[s]" a "risk" to them. A.112.

These non-mandatory supervision conditions were not orally imposed at the sentencing hearing. They were not discussed by any party or the court. As a result, these conditions were not imposed in Maiorana's presence, in violation of his rights under the Constitution and Federal Rule of Criminal Procedure 43(a).

In addition, because they were not discussed, these additional conditions were not justified on the record. Under Sections 3583(c) and 3553(a) of Title 18, supervised release conditions, like other aspects of a sentence, must reflect a district court's "individualized assessment" of the defendant "based on the facts presented." *See Gall v. United States*, 552 U.S. 38, 50 (2007); *United States v. Brown*, 653 F. App'x 50, 51 (2d Cir. 2016) (summary order). Supervision conditions must be "reasonably related" to the relevant statutory sentencing factors, including the "nature and circumstances of the offense and the history and characteristics" of the individual defendant. 18 U.S.C. § 3583(d). Conditions must also "involve[] no greater deprivation of liberty than is reasonably necessary." 18 U.S.C. § 3583(d); *see also, e.g., United States v. Reeves*, 591 F.3d 77, 80 (2d Cir. 2010). If

21

a condition implicates a fundamental liberty interest, the condition must be "narrowly tailored to serve a compelling government interest." *United States v. McLaurin*, 731 F.3d 258, 262 (2d Cir. 2013).

Here the record reveals no explanation as to how certain of these non-mandatory conditions are reasonably related to the goals of supervised release and involve no greater deprivation of liberty than necessary to accomplish those goals. For example, it is not clear why Maiorana's travel should be restricted to one judicial district (condition #3); why he should be obligated to work full time (condition #7); or why his probation officer must be able to come to his home or anywhere else Maiorana happens to be at "any time" (condition #6), all on penalty of return to prison.

Further, certain of these conditions improperly delegate excessive authority to the Probation Department or are vague and overbroad. The power to impose non-mandatory supervised release conditions is "vested exclusively in the district court" and a court may not delegate this power to the Probation Office. *United States v. Matta*, 777 F.3d 116, 122 (2d Cir. 2015). Thus, while a court may leave to a probation officer "minor" details of a

22

defendant's supervision, the court may not grant "decisionmaking authority which would make a defendant's liberty itself contingent on a probation officer's exercise of discretion." *Id.*

The condition requiring Maiorana to work full time unless "excuse[d]" by his Probation Officer, A.112, is an improper delegation of judicial authority. The condition authorizes the probation officer to excuse Maiorana from working or seeking employment at the officer's own discretion. The condition does not include any criteria or guidance cabining this decision, effectively giving the probation officer "unfettered discretion," *Boles*, 914 F.3d at 112, to determine if Maiorana must work. As a result, this work condition is closely analogous to other conditions this Court has invalidated as the improper delegation of a court's supervisory power.

For the same reasons, the travel restriction (condition #3), association restriction (condition #8), and risk notification (condition #12) conditions are improper delegations to the Probation Department.

The risk notification condition is also unconstitutionally vague, since it does not explain what is meant by a "risk to another person," A.112. The

23

condition does not sufficiently delineate when notification may be required, it does not adequately describe what a defendant must do to "notify" someone "about the risk," and it affords a probation officer too much discretion to determine when and how any notification must be made.[3] *See Boles*, 914 F.3d at 111-12 (vacating similar risk notification condition and remanding for clarification); *United States v. Bickart*, 825 F.3d 832, 841-42 (7th Cir. 2016) (finding similar risk notification condition "impermissibly vague," despite requirement that probation officer seek court approval before requiring notification).

In sum, the 13 "standard" conditions imposed in Maiorana's written judgment—but not during the sentencing hearing—should be vacated.

---

[3] This Court has previously declined to decide challenges to similar risk notification requirements as "unripe." *See, e.g.*, *United States v. Decker*, 838 F. App'x 640, 641-42 (2d Cir. 2021) (summary order). But the existence of this vague condition may well have a chilling effect on a defendant's lawful social or political activities while he is on supervised release. Courts should not subject defendants to vague restrictions on their liberty while simply hoping to never have to take the trouble to clarify them. Moreover, Maiorana is challenging several supervision conditions and if this Court does remand for resentencing, it is no additional burden to clarify this "risk" condition.

These conditions impose significant burdens on Maiorana above and beyond the district court's oral sentence. These conditions were not discussed or explained during the sentencing hearing. And some of the conditions are not justified on the record, delegate excessive authority to the Probation Department, and are overbroad and vague. This Court should vacate these conditions and remand for resentencing so the district court can determine which of these conditions are appropriate for Maiorana, explain its decision on the record, impose those conditions in Maiorana's presence, and clarify the imposed conditions as necessary.

IV.   *United States v. Truscello* **should not save the "standard" conditions imposed in Maiorana's written judgment.**

In *United States v. Truscello*, 168 F.3d 61 (2d Cir. 1999), this Court held that a district court need not explicitly reference every "standard condition" of supervised release during its oral pronouncement of sentence, despite a defendant's right to be present at sentencing. But this Court should find that *Truscello* does not control the outcome here.

First, the Court should recognize that several of the non-mandatory "standard" conditions imposed on Maiorana are not "basic administrative

25

requirement[s] essential to the functioning of the supervised release system," and therefore are not implicit in a term of supervised release under *Truscello*'s reasoning.

Second, this Court align itself with the Fourth, Fifth, Seventh, and D.C. Circuits, and hold that all non-mandatory supervised release conditions must be orally imposed at sentencing.

### A. Maiorana's written judgment imposes conditions that go beyond basic administrative requirements essential to supervised release.

In *United States v. Truscello*, the defendant argued that the district court had violated his right to be present at sentencing by including numerous "standard" supervision conditions in the written judgment that had not been orally imposed at sentencing. 168 F.3d at 62. This Court rejected that argument, characterizing the written judgment as "a clarification of what the oral pronouncement meant by 'supervised release.'" *Id.* at 63. The Court reasoned that, "[i]mplicit in the very nature of supervised release" are "certain conditions" "necessary to effect its purpose." *Id.* at 62. The Court described the contested conditions as "basic administrative requirement[s]

essential to the functioning" of supervised release, highlighting requirements that the defendant report to his probation officer, follow his officer's instructions, and notify his officer about changes in employment or residence. *Id.* at 63-64. As a result, the Court held that including these conditions in the written judgment "simply clarified" the oral sentence, and did not conflict with that sentence or impose additional burdens on the defendant. *Id.*; *accord United States v. Asuncion-Pimental*, 290 F.3d 91, 94-95 (2d Cir. 2002).

In subsequent decisions, this Court has recognized that *Truscello*'s reasoning does not "extend[] to conditions that govern more than the basic administration of" supervised release. *United States v. Thomas*, 299 F.3d 150, 155 (2d Cir. 2002). In *Thomas*, for example, the Court held that the district court had violated the defendant's right to be present when the written judgment added a supervision condition prohibiting the defendant from "possess[ing] any identification in the name of another person." 299 F.3d at 154. The Court reasoned that this condition went beyond a "basic requirement for the administration" of supervision and noted that the

27

condition was burdensome, potentially prohibiting even innocent conduct. *Id.* at 154-55. As a result, the Court ordered that portion of the written judgment stricken. *Id.* at 156.

Several of the conditions included in Maiorana's written judgment go well beyond basic administrative requirements of supervision. For example, the condition requiring Maiorana to work full time at the discretion of his probation officer is more than a bare "administrative" requirement. This condition is materially different from a reporting obligation or an admonition that Maiorana not violate the law. And it is the sort of condition that may not be appropriate in every case and which should only be imposed after careful, individualized consideration of the defendant's offense and characteristics. The same is true for the "risk" notification condition.

For these reasons, the Court should find that *Truscello* does not govern this case and that the district court needed to orally impose, and justify, the additional supervision conditions in Maiorana's written judgment.

**B.** **The Court should require district courts to orally impose every non-mandatory condition of supervised release.**

Alternatively, this Court should take the opportunity to clarify its law and hold that a district court must orally impose all *non-mandatory* conditions of supervised release, whether or not those conditions could be considered "standard," "basic," or "essential." This is the rule in the Fourth, Fifth, Seventh, and D.C. Circuits.

The District of Columbia Circuit recently addressed this issue in *United States v. Matthews*, -- F.4th --, 2022 WL 4074408 (D.C. Cir. Sep. 6, 2022). The circuit recognized that the "supervised release statute [18 U.S.C. § 3583(d)] draws a basic distinction between mandatory and discretionary conditions" and held that, under the Fifth Amendment and Federal Rule of Criminal Procedure 43(a)(3), "all" "discretionary conditions must be orally pronounced" at sentencing. *Matthews*, 2022 WL 4074408 at *2.

In so holding, the circuit rejected the government's argument that so-called "standard" conditions, including the conditions recommended in U.S.S.G. § 5D1.3(c), were somehow "implicit" in any term of supervised release. *See Matthews*, 2022 WL 4074408 at *3. This was wrong, first, because

29

"the governing statute classifies them as discretionary." *Id.* Second, "even the most pedestrian of the conditions contains a level of detail that cannot plausibly be characterized as implicit in supervised release itself," and some of the conditions are "quite intrusive." *Id.* As a result, the D.C. Circuit concluded that a district court must consider whether each discretionary condition is "warranted in the circumstances of each case," "allow the defendant an opportunity to contest" the conditions, and "orally pronounce them at sentencing."[4]

*Matthews* tracks decisions of the Fourth Circuit, Fifth Circuit, and Seventh Circuit. *See United States v. Rogers*, 961 F.3d 291, 297-98 (4th Cir. 2020) ("[W]e conclude, following the Fifth and Seventh Circuits, that the district court was required to orally pronounce the discretionary conditions" of supervised release, including "those categorized as 'standard' by the Guidelines."); *United States v. Diggles*, 957 F.3d 551, 557-58 (5th Cir. 2020) (en

---

[4] This does not mean a court must literally read out each non-mandatory condition. It can reference conditions listed in a presentence report or the Sentencing Guidelines. *See Matthews*, 2022 WL 4074408 at *3 n.2.

banc); *United States v. Anstice*, 930 F.3d 907, 910 (7th Cir. 2019) (holding that "standard" discretionary conditions, including reporting requirements, must be orally pronounced at sentencing).

The reasoning of these circuits is persuasive. As the Fifth Circuit explains in *United States v. Diggles*, if a court attempts to distinguish "special" versus "standard" conditions, "these lines are not so clear cut" and the law becomes confused as to when oral pronouncement of conditions is required. *See Diggles*, 957 F.3d at 557. In contrast, the relevant statute draws a clear distinction between "mandatory" versus "discretionary" supervised release conditions. This distinction is thus easier to administer and actually grounded in the statute, as opposed to a court's own subjective, ad hoc interpretation as to how particular conditions should be classified. As the circuit reasoned, "[t]he scope of the [sentence] pronouncement requirement should correspond to the standard governing the presence right from which it flows." *Id.* at 558.

Finally, as this Court recognized in *United States v. Thomas*, requiring district courts to orally pronounce conditions of supervised release is not

31

particularly burdensome, and "problems" "can be avoided rather easily if district courts take the time to state the defendant's sentence and to indicate the conditions that accompany it in open court and with appropriate precision." 299 F.3d at 156. Oral pronouncement of supervision conditions also "serves the salutary function of insuring that a defendant fully understands the contours of his punishment at a time when any questions … can be explored and resolved in person." *Id.*

## CONCLUSION

For the reasons detailed above, the Court should order that the written judgment's special condition related to mental health treatment conform to the oral sentence; vacate the "standard" supervision conditions that were not imposed orally; and remand this case for resentencing.

Dated:       New York, New York
             October 6, 2022

Respectfully submitted,
Federal Defenders of New York, Inc.

By: __/s/ Sarah Baumgartel_____
    Sarah Baumgartel, Esq.
    52 Duane Street, 10th Floor
    New York, New York 10007
    Tel.: (212) 417-8772

32

## CERTIFICATE OF SERVICE

I certify that a copy of this Brief has been served by CM/ECF on the United States Attorney/E.D.N.Y.; Attention: **ARTIE MCCONNELL, ESQ**., Assistant United States Attorney, 271 Cadman Plaza East, Brooklyn, NY 11201.

Dated:      New York, New York
            October 6, 2022

/s/ Sarah Baumgartel
**SARAH BAUMGARTEL**
Assistant Federal Defender

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1.  This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because:

> this brief contains 6,023 words, excluding the parts of the brief exempted by Fed. R. App. P. 2(a)(7)(B)(iii); and

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a monospaced typeface using **Microsoft Word** with **14 characters per inch in Palatino Linotype** type style.

Dated:      New York, New York
            October 6, 2022


                    /s/ Sarah Baumgartel
                    **SARAH BAUMGARTEL**
                    Assistant Federal Defender

34