# 22-1115-cr

To be argued by:
SARAH BAUMGARTEL

_____
_____

United States Court of Appeals
For the Second Circuit

_____

Docket No. 22-1115-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

-against-

BRIAN MAIORANA,

*Defendant-Appellant.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
_____

**BRIEF FOR HEARING EN BANC ON BEHALF OF
DEFENDANT-APPELLANT BRIAN MAIORANA**
_____

Federal Defenders of New York, Inc.
Appeals Bureau
52 Duane Street, 10th Floor
New York, New York 10007
(212) 417-8772

Sarah Baumgartel,
Edward S. Zas,
*Of Counsel*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

QUESTION PRESENTED ........................................................................2

STATEMENT OF JURISDICTION ........................................................2

STATEMENT OF THE CASE..................................................................2

STATEMENT OF FACTS.........................................................................4

  A.  Background...................................................................................4

  B.  Maiorana's Offense and Conviction .......................................5

  C.  Maiorana's Sentencing.............................................................6

  D.  The Written Judgment ............................................................10

  E.  Maiorana's Appeal ..................................................................13

SUMMARY OF ARGUMENT................................................................14

STANDARD OF REVIEW .....................................................................15

ARGUMENT..............................................................................................16

I.   Defendants have the right to be present at sentencing. Because supervised release conditions are a component of the sentence, they must be imposed in a defendant's presence. ..................................16

  A.  Criminal sentences must be imposed in a defendant's presence........16

  B.  A federal defendant's sentence may include supervised release, with various conditions. ...........................................................18

  C.  This Court extends the requirement that district courts orally pronounce sentences to supervised release conditions— sometimes. ................................................................................22

II.  This Court should overrule *Truscello* and abandon the exception it created to the oral pronouncement requirement for certain discretionary supervision conditions: district courts should be required to orally pronounce all non-mandatory conditions. ..............25

i

A.  Overruling *Truscello* would bring the Second Circuit in line with most other circuits, which require oral pronouncement of all non-mandatory conditions.........................................................................25

B.  Requiring oral pronouncement of all discretionary conditions best accords with the requirements of 18 U.S.C. § 3583(d), and protects a defendant's due process rights..............................................28

C.  *Truscello* has proven difficult to administer, while a requirement to announce all non-mandatory conditions will be easy to follow and will help preserve appellate resources. ...........................................33

D.  Oral pronouncement of all discretionary conditions will not be unduly burdensome...................................................................................36

E.  Announcing conditions at sentencing will ensure defendants are informed of their conditions; preserve the public's right to hear what sentences are being imposed; provide an opportunity for objections; and encourage sentencing courts to undertake the individualized assessment and tailoring required by statute. ............38

CONCLUSION ...................................................................................................44

# TABLE OF AUTHORITIES

**Cases**

*Johnson v. United States,*
529 U.S. 694 (2000) .......................................................... 18, 19, 20, 39

*Kentucky v. Stincer,*
482 U.S. 730 (1987) ....................................................................16

*United States v. A-Abras Inc.,*
185 F.3d 26 (2d Cir. 1999)...................................................... 16, 18

*United States v. Alcantara,*
396 F.3d 189 (2d Cir. 2005)................................................... 17, 38, 39

*United States v. Anstice,*
930 F.3d 907 (7th Cir. 2019)................................................. 25, 26, 30

*United States v. Asuncion-Pimental,*
290 F.3d 91 (2d Cir. 2002)...................................................... 23, 29

*United States v. Cavera,*
550 F.3d 180 (2d Cir. 2008)................................................................39

*United States v. DeMartino,*
112 F.3d 75 (2d Cir. 1997)...................................................... 16, 17

*United States v. Diggles,*
957 F.3d 551 (5th Cir. 2020).................................................... passim

*United States v. Dodd,*
782 F. App'x 57 (2d Cir. 2019) .........................................................33

*United States v. Gagnon,*
470 U.S. 522 (1985) ....................................................................16

*United States v. Geddes,*
71 F.4th 1206 (10th Cir. 2023) ............................................. 25, 26, 31

*United States v. Handakas,*
329 F.3d 115 (2d Cir. 2003)..............................................................24

*United States v. Hayden,*
102 F.4th 368 (6th Cir. 2024) ......................................... 25, 26, 28, 37

*United States v. Lastra,*
973 F.2d 952 (D.C. Cir. 1992) .........................................................16

*United States v. Lewis*,
    424 F.3d 239 (2d Cir. 2005)..............................................................38

*United States v. Marquez*,
    506 F.2d 620 (2d Cir. 1974)..............................................................17

*United States v. Matthews*,
    54 F.4th 1 (D.C. Cir. 2022) ....................................................... passim

*United States v. Meadows*,
    No. 22-3155, 2025 WL 786380 (2d Cir. Mar. 12, 2025)...................35

*United States v. Montoya*,
    82 F.4th 640 (9th Cir. 2023) ........................................... 25, 26, 32, 37

*United States v. Pasley*,
    No. 23-5230, 2024 WL 2862562 (6th Cir. June 6, 2024)..................17

*United States v. Rodriguez*,
    75 F.4th 1231 (11th Cir. 2023) ............................................. 17, 26, 32

*United States v. Rogers*,
    961 F.3d 291 (4th Cir. 2020).................................................... passim

*United States v. Rosado*,
    109 F.4th 120 (2d Cir. 2024)..............................................................37

*United States v. Rosario*,
    386 F.3d 166 (2d Cir. 2004).......................................................18, 22

*United States v. Salazar*,
    No. 22-1385, 2023 WL 4363247 n.1 (2d Cir. July 6, 2023) .............37

*United States v. Sepulveda-Contreras*,
    466 F.3d 166 (1st Cir. 2006) .............................................................26

*United States v. Singh*,
    726 F. App'x 845 (2d Cir. 2018) ......................................................34

*United States v. Thomas*,
    299 F.3d 150 (2d Cir. 2002)............................................. 23, 33, 34, 36

*United States v. Truscello*,
    168 F.3d 61 (2d Cir. 1999).......................................................passim

*United States v. Walker*,
    80 F.4th 880 (8th Cir. 2023) .............................................................25

*United States v. Washington*,
    904 F.3d 204 (2d Cir. 2018)............................................ 15, 18, 24, 35

*United States v. Whitaker*,
No. 21-1543, 2023 WL 5499363 (2d Cir. Aug. 25, 2023) ...............................34

## Constitutional Provisions, Statutes, Rules, and Guidelines

U.S. Const. amend. I.......................................................................... 17, 38
U.S. Const. amend. V ......................................................................... passim
U.S. Const. amend. VI.........................................................................38
18 U.S.C. § 875(c) ................................................................................3
18 U.S.C. § 922(g)(1) ................................................................... 2, 3, 6
18 U.S.C. § 3231...................................................................................2
18 U.S.C. § 3553................................................................ 8, 20, 21, 28
18 U.S.C. § 3583...........................................................................passim
18 U.S.C. § 3742(a) ..............................................................................2
28 U.S.C. § 46(b).................................................................................22
28 U.S.C. § 994(a) ..............................................................................21
28 U.S.C. § 1291....................................................................................2
Fed. R. Crim. P. 35..............................................................................17
Fed. R. Crim. P. 43..............................................................................16
U.S.S.G. § 5D1.3 ............................................................................passim

## Other Authorities

DeLisi, Matt, *et al.*, *Who Are the Compliant Correctional Clients? New
Evidence on Protective Factors among Federal Supervised Releases*,
65 Int'l J. Offender Therapy and Comp. Criminology 1536 (2021) ............19
Doherty, Fiona, *Indeterminate Sentencing Returns: The Invention of
Supervised Release*, 88 N.Y.U. L. Rev. 958 (2013) ............................................19
Doleac, Jennifer L., *Study after study shows ex-prisoners would be better
off without intense supervision*, Brookings (July 2, 2018) ...............................41
Klingele, Cecelia, *Rethinking the Use of Community Supervision*,
103  J. Crim. L. & Criminology 1015 (2013).....................................................43
Lopoo, Evangeline, *et al.*, *How Little Supervision Can We Have?*,
6 Annual Review of Criminology 36 (2023).....................................................41
Schuman, Jacob, *Criminal Violations*, 108 Va. L. Rev. 1817 (2022) .................19

Scott-Hayward, Christine S., *The Failure of Parole: Rethinking the Role of the State in Reentry*, 41 N.M. L. Rev. 421 (2011)..........................................40

S. Rep. No. 98-225 (1983) .......................................................................................19

The Pew Charitable Trusts, *Probation and Parole Systems Marked by High Stakes, Missed Opportunities* (2018).....................................................41

Watson, Emily, *One Size Fits None: How 'standard conditions' of probation set people up to fail*, Prison Policy Initiative (Oct. 2024) ...............43

**INTRODUCTION**

Criminal defendants have a constitutional and statutory right to be present at sentencing. A defendant's presence is critical to the fundamental fairness of the proceeding: it ensures that the defendant receives adequate notice of his sentence and provides him an opportunity to object to its terms. But starting with *United States v. Truscello*, 168 F.3d 61 (2d Cir. 1999), this Court has steadily eroded this right to be present by repeatedly holding that important components of a sentence—the conditions of supervised release— do not need to be orally pronounced in the defendant's presence.

The Court should reverse course, overrule *Truscello*, and hold that all discretionary conditions of supervised release must be orally pronounced at the sentencing hearing. This would bring this Circuit's law in line with that of most other circuits. It would also better protect defendants' due process rights and encourage the individualized assessment that 18 U.S.C. § 3583(d) requires sentencing courts to undertake before imposing any discretionary condition of supervised release. And it would better serve the public's

significant interest in being able to hear the sentences being imposed and the reasons for them.

## QUESTION PRESENTED

Should this Court overrule *United States v. Truscello*, 168 F.3d 61 (2d Cir. 1999), and hold that a defendant must be specifically notified, at the sentencing proceeding, in his presence, of all non-mandatory conditions of supervised release imposed as part of a criminal sentence?

## STATEMENT OF JURISDICTION

This is an appeal from judgment imposed on May 18, 2022, in the United States District Court for the Eastern District of New York (Block, J.). Appellant Brian Maiorana's notice of appeal was timely filed on May 19, 2022. The district court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## STATEMENT OF THE CASE

A grand jury in the Eastern District of New York returned an indictment charging Brian Maiorana with (i) possession of a firearm and ammunition following a felony conviction, in violation of 18 U.S.C. § 922(g)(1) (Count One); (ii) possession of ammunition following a felony

conviction, in violation of 18 U.S.C. § 922(g)(1) (Count Two); and (iii) interstate threats, in violation of 18 U.S.C. § 875(c) (Count Three).[1] A.10-11.

On April 26, 2021, Maiorana pled guilty to Count One, pursuant to a written plea agreement with the government.[2] A.17-25. He admitted that, in November 2020, he knowingly possessed a gun in his home in Staten Island, after previously being convicted of a felony. A.65.

On May 18, 2022, the district court (Block, J.) sentenced Maiorana to 36 months in prison and three years of supervised release with numerous conditions. A.8. Maiorana completed his prison term and was released from

---

[1] Maiorana's opening appellate brief to the panel is cited "OB." The en banc appendix is cited "A." Maiorana's Presentence Investigation Report is cited "PSR." The PSR addendum dated December 6, 2021, is cited "PSR Add." Entries on the district court docket, *United States v. Brian Maiorana*, No. 20 Cr. 519(FB) (E.D.N.Y.), are cited "DE." Unless otherwise noted, quotations in this brief omit internal citations.

[2] The plea agreement contained a limited waiver of appellate rights, which does not bar Maiorana's appeal of any term or condition of supervised release. *See* OB 7.

custody in May 2023. He is currently on supervised release with a projected completion date in May 2026.

## STATEMENT OF FACTS

### A. Background

Brian Maiorana, now 58 years old, was born and raised in Brooklyn. PSR ¶ 33. His father was a combat veteran who was abusive towards his family. *Id.* ¶ 36. As a result of this abuse, Maiorana's parents separated when he was four; he and his brother were raised by his mother under difficult economic circumstances. *Id.*

Maiorana sought a better life by joining the U.S. Armed Services. He left high school early to work and then enlisted in the Navy at age 19. PSR ¶¶ 59, 66. He served as an active-duty member from 1985 to 1989, and in the reserves for an additional three years. *Id.* ¶ 66. He was honorably discharged in 1993. *Id.* After Maiorana left the Navy, he held different jobs, including working as a utility operator; a mechanic; and a plant technician for National Grid. *Id.* ¶¶ 64-65.

Maiorana learned about and used firearms as part of his military service. PSR ¶ 7. However, in 2007, he sustained a state felony conviction for

statutory sexual assault. *Id.* ¶ 26. Maiorana completed his sentence for this offense and had no further issues with the law. But this felony conviction made it unlawful for him to possess firearms or ammunition.

Maiorana married in 1988, and he and his wife had three children. PSR ¶¶ 39-40. After around 11 years, the couple divorced. *Id.*

By 2020, Maiorana was living by himself in Staten Island. From 2018 through the beginning of 2020, he worked for National Grid. PSR ¶ 64. When the COVID-19 pandemic began, he was laid off and could not immediately find another job. *Id.* He also has several medical conditions that require ongoing treatment and limit his ability to work. *Id.* ¶¶ 50-53.

### B. Maiorana's Offense and Conviction

Maiorana became engrossed by the 2020 presidential election and upset about the general state of the country: he was concerned about news reports regarding widespread protests and unrest, and what he perceived as "anarchy on the streets across the nation." A.102. Between September and November 2020, he made belligerent social media posts related to these topics. *See* PSR ¶ 4. The FBI regarded these posts as threatening. This

prompted federal agents to obtain a search warrant for Maiorana's home, where they found a firearm and ammunition. *Id.* ¶ 9. Maiorana was federally charged with the unlawful possession of these items, and interstate threats, and detained in jail. *Id.* ¶¶ 1-4, 10.

Maiorana denied that he had intended any of his online statements as true threats. As one of Maiorana's (now adult) children explained, Maiorana sometimes gets angry and "says things without thinking it fully through" because he "does not have a filter." *Id.* ¶ 41. However, no one in his family has ever known him to act violently. *Id.*

Regardless, Maiorana acknowledged that his possession of a gun in his home was unlawful because of his prior felony conviction. In April 2021, he pled guilty to violating 18 U.S.C. § 922(g)(1), pursuant to a written plea agreement with the government. A.25. The parties' agreement estimated an advisory Sentencing Guidelines range of 12 to 18 months. A.17-20.

## C.  **Maiorana's Sentencing**

By the time of his sentencing in May 2022, Maiorana had already served 18 months in jail. A.7-8. Prior to the sentencing hearing, the

government sent a letter urging the district court to sentence Maiorana to an above-Guidelines sentence of 36 months in prison, because of his social media statements. DE 18 at 1-3. In contrast, Maiorana's counsel requested a sentence of time served, effectively the top of his Guidelines. DE 19 at 1. Counsel explained that Maiorana's gun possession related to a misguided but sincere belief that he needed to protect himself and his home, and argued that Maiorana's social media posts were not true threats, either legally or in Maiorana's own mind. DE 19 at 1-3.

Neither the government nor defense sentencing submission discussed supervised release after prison. In its presentence report addendum, the Probation Department recommended two years of supervised release with certain "special" conditions, including a physical and electronic search condition; a requirement to report "electronic communications service accounts"; a mental health evaluation and treatment; and restrictions on Maiorana's associations. *See* PSR Add. The addendum did not recommend or list any other proposed conditions of supervised release, including, for example, any of the "standard" conditions listed in U.S.S.G. § 5D1.3(c).

At sentencing, the district court recognized that Maiorana had not been convicted of any criminal conduct related to his social media posts and disclaimed any belief that a criminal charge would be "viable," A.76-77, stating "nobody has been threatened" and that Maiorana's posts did not take the "shape of a particular threat against a particular" person, A.79. Nonetheless, the court agreed with the government that it could consider these statements under 18 U.S.C. § 3553(a). A.83-85.

Throughout sentencing, the court referenced the "special" conditions of supervised release recommended by the Probation Department because, according to the court, "regardless of what the custodial sentence will be," Maiorana would be out of prison "fairly soon," and the court wanted to "monitor[] his behavior" so that his "verbal activity" would not "translate into anything of a physical or harmful nature to people." A.72-73; *see also* A.85 ("I'm really concerned about … these conditions of supervised release ... to protect the public, we have to really … have a close look at how he's going to behave when he's released from incarceration.").

The court discussed the conditions recommended in Probation's addendum, including the search condition, the obligation to report electronic accounts, and mental health treatment.[3] *See* A.85-87. The defense "agree[d]" to these special conditions. A.94-96.

Towards the end of the hearing, Maiorana personally addressed the court. He expressed his regret for his social media statements, which he described as "hateful and out of character." A.102. He also explained that he had a gun in his home because he was afraid "over the direction that the country was headed," and fearful that he was witnessing "anarchy on the streets across the nation." A.102. He recognized that his conduct was not "becoming of an honorably discharged veteran" of the Navy and said that he was "deeply sorry" for his actions. A.103.

---

[3] With respect to mental health treatment, the court made an oral modification to Probation's recommendation, specifying, "I don't want him [Maiorana] to contribute to the cost of that. There are these financial burdens that are being imposed here. I'm not interested in that." A.87. Maiorana maintains his appellate argument that the written judgment must be amended to conform to this oral pronouncement of the condition. OB 19.

After Maiorana spoke, the court announced that it was "going to go along with the Government" and "impose 36 months." A.106. The court said it was "erring on the side of protecting the public as much as we can" and "sending a message" that "these types of things will not go unpunished severely." A.106. The court added, "it will be 36 months followed by three years of supervised release with all of these conditions that I articulated before. There will be general conditions of supervised release as well, which will be part and parcel of the judgment." A.106.

### D. The Written Judgment

After the sentencing hearing, the court issued a written judgment. A.7-8. This judgment lists numerous conditions of supervised release. It includes four conditions mandated by statute. A.110; *see also* 18 U.S.C. § 3583(d). It also includes the "special" conditions the district court discussed at sentencing. A.111. The judgment further includes 13 "standard" conditions:

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of the time you were sentenced, unless the probation officer

instructs you to report to a different probation office or within a different time frame.

2.   After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3.   You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4.   You must answer truthfully the questions asked by your probation officer.

5.   You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6.   You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7.   You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation

officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12. If the probation officer determines base [sic] upon your criminal history personnel [sic] history and characteristic, and nature and circumstances of your offense, you pose a risk to another person (including an organization), the probation officer, with prior approval of the Court, may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

13. You must follow the instructions of the probation officer related to the conditions of supervision.

A.112. These "standard" conditions were not included in the presentence report and addendum disclosed to Maiorana. They also were not discussed or imposed by the district court during the sentencing hearing.

### E. Maiorana's Appeal

Maiorana timely appealed his sentence, challenging certain of his supervision conditions. He argued that the district court erred by failing to orally pronounce the 13 "standard" conditions that were later added to his written judgment. He asserted, in relevant part, that these numerous, burdensome conditions should not be considered "basic administrative requirement[s]," or somehow "implicit" in a term of supervised release. *See* OB 25-28. He further argued that the Court should hold that all non-mandatory conditions of supervised release, including so-called "standard" conditions, had to be orally pronounced at sentencing. *See* OB 29-31.

The parties' initial appellate briefing was completed in January 2023, and a panel of this Court heard oral argument on October 12, 2023.

On March 31, 2025, this Court ordered rehearing en banc to determine whether *Truscello* should be overruled.

## SUMMARY OF ARGUMENT

This Court should overrule *Truscello* and hold that all non-mandatory conditions of supervised release must be orally imposed at the sentencing hearing, in the defendant's presence. This is the law in most other circuits, and other circuits' reasons for adopting this rule are persuasive.

Defendants have both a constitutional and statutory right to be present at sentencing. This means that a defendant's sentence must be announced at the sentencing hearing, in his presence. This oral pronouncement requirement generally extends to all aspects of a defendant's sentence, including any term of supervised release and the conditions of supervised release.

But this Court has created an exception to this general rule for certain supervision conditions, including those that the Sentencing Guidelines label "standard," and others that the Court deems merely "administrative" or somehow implicit in a term of supervised release.

This conflicts with the law in most other circuits: Most circuits require district courts to orally pronounce all discretionary supervision conditions—

that is, all conditions other than the few mandatory conditions listed in 18 U.S.C. § 3583(d). This rule is grounded in the text of the statute itself and better protects defendants' due process rights. It is also a bright-line rule that is easy to administer, providing clear direction to district courts and saving appellate resources that would otherwise be used to decide oral pronouncement claims. The rule is not burdensome on sentencing courts. Finally, the rule has the salutary effects of better informing defendants and the public of supervision conditions, facilitating timely objections to conditions, and encouraging sentencing courts to undertake the individualized assessment that § 3583(d) requires before imposing any discretionary condition.

For these reasons, the Court should overrule *Truscello* and adopt a rule requiring the oral pronouncement of all discretionary conditions of supervised release.

## STANDARD OF REVIEW

This Court reviews legal issues *de novo*, including questions related to a defendant's right to be present at sentencing. *See, e.g.*, *United States*

*v. Washington*, 904 F.3d 204, 207 (2d Cir. 2018) (exercising *de novo* review of supervision condition listed in written judgment, but not orally imposed).

## ARGUMENT

**I.**   **Defendants have the right to be present at sentencing. Because supervised release conditions are a component of the sentence, they must be imposed in a defendant's presence.**

**A.**   **Criminal sentences must be imposed in a defendant's presence.**

Criminal defendants have a constitutional and statutory right to be present at sentencing. *See United States v. A-Abras Inc.*, 185 F.3d 26, 29 (2d Cir. 1999); *United States v. DeMartino*, 112 F.3d 75, 78 (2d Cir. 1997). This right is grounded in the Due Process Clause and codified in Federal Rule of Criminal Procedure 43(a)(3). *See United States v. Gagnon*, 470 U.S. 522, 526 (1985) (per curiam); *see also Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) ("[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.").

A defendant's "right to be present at his sentencing is of fundamental importance." *United States v. Lastra*, 973 F.2d 952, 955 (D.C. Cir. 1992). A defendant's presence at sentencing ensures that he is on notice of the terms

of his sentence and provides an opportunity for him to raise objections, contributing to the fairness of the proceeding. *See, e.g., United States v. Rodriguez*, 75 F.4th 1231, 1247-48 (11th Cir. 2023). The oral pronouncement of sentences also serves the purposes of "publicly delivering the defendant's punishment and respecting a defendant's interest in being sentenced face-to-face by a judge." *United States v. Pasley*, No. 23-5230, 2024 WL 2862562, at *4 (6th Cir. June 6, 2024). And oral pronouncement respects the public's First Amendment right of access to sentencing proceedings, allowing the public to hear the sentences being imposed and the reasons for them. *See, e.g., United States v. Alcantara*, 396 F.3d 189, 196-99 (2d Cir. 2005).

A defendant's right to be present at sentencing means that the court's oral pronouncement constitutes the sentence. *See DeMartino*, 112 F.3d at 78-79; *see also* Federal Rule of Criminal Procedure 35(c) (defining the "sentencing" as "the oral pronouncement of the sentence"). Any later written judgment is merely evidence of the oral sentence. *See, e.g., United States v. Marquez*, 506 F.2d 620, 622 (2d Cir. 1974).

Thus, where the oral sentence conflicts with a later written judgment, the "right of a defendant to be present at sentencing dictates that the oral pronouncement of sentence must control." *A-Abras Inc.*, 185 F.3d at 29. Any alteration or addition to the oral sentence made in the written judgment is invalid and must be stricken. *See Washington*, 904 F.3d at 208 (directing district court to delete requirement imposed in written judgment that was not included in oral pronouncement of sentence); *United States v. Rosario*, 386 F.3d 166, 169 (2d Cir. 2004) (same).

## B. A federal defendant's sentence may include supervised release, with various conditions.

Under 18 U.S.C. § 3583(a), a court sentencing a defendant to prison "may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment."

Federal supervised release originated in the Sentencing Reform Act of 1984, in which Congress abolished parole and made other sweeping reforms to the federal sentencing system. *See, e.g.*, *Johnson v. United States*, 529

U.S. 694, 696-97 (2000).[4] Unlike parole, which replaced a portion of a defendant's prison sentence, any supervised release begins after the prison term is completed. Supervised release is not supposed to be punitive: it "fulfills rehabilitative ends, distinct from those served by incarceration." *Id.* at 709. The purpose of supervised release is "to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense," or to help rehabilitate a defendant who "spent a fairly short period in prison … but still needs supervision and training programs after release." S. Rep. No. 98-225, at 124 (1983).

Supervised release is not mandated for most federal offenses, and Congress did not intend for judges to impose it in every case. Instead, sentencing courts were given "freedom to provide postrelease supervision for those, and only those, who needed it. … Congress aimed … to use the district courts' discretionary judgment to allocate supervision to those

---

[4] For comprehensive accounts of the history of federal supervised release, *see generally* Jacob Schuman, *Criminal Violations*, 108 Va. L. Rev. 1817, 1825-30 (2022); Fiona Doherty, *Indeterminate Sentencing Returns: The Invention of Supervised Release*, 88 N.Y.U. L. Rev. 958, 995-1104 (2013).

releasees who needed it most." *Johnson*, 529 U.S. at 709. Thus, § 3583(c) instructs that, "in determining whether to include a term of supervised release," and, "the length of the term and the conditions of supervised release," courts "shall consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)."

If a court does impose supervised release, § 3583(d) includes a few mandatory conditions that a court "shall order, as an explicit condition of supervised release."[5] Apart from these mandatory conditions, the statute does not include any "standard" or "recommended" supervised release

---

[5] These mandatory conditions require that the defendant not commit another crime; make any restitution required by law; and refrain from unlawful possession of a controlled substance. *See* 18 U.S.C. § 3583(d). If the defendant is convicted of "a domestic violence crime," he must also attend an "offender rehabilitation program" related to domestic violence. *Id.* Courts must further order that a "person required to register under the Sex Offender Registration and Notification Act, … comply with the requirements of that Act." *Id.* Finally, courts must order "that the defendant cooperate in the collection of a DNA sample" and "that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance," although this drug testing condition may be suspended. *Id.*

conditions. Instead, the statute states that a court "may order, as a further condition of supervised release," any condition that:

(1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

(2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

(3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a) ….

18 U.S.C. § 3583(d).

The Sentencing Commission has issued several policy statements related to supervised release. Guidelines §§ 5D1.3(a) through (e) recommend various conditions that courts may include as part of supervised release. These include the "mandatory" conditions required by statute, U.S.S.G. § 5D1.3(a). These policy statements also include conditions the Guidelines term "standard" and "special," U.S.S.G. §§ 5D1.3(c)-(e), though neither these labels nor the conditions themselves appear in the supervised release statute.

**C. This Court extends the requirement that district courts orally pronounce sentences to supervised release conditions—sometimes.**

This Court has recognized that a defendant's right to the oral pronouncement of sentence extends to conditions of supervised release— sometimes. The Court generally requires the sentence, including any supervision conditions, to be orally imposed in the defendant's presence. *See, e.g.*, *Rosario*, 386 F.3d at 168-69.

But starting with *United States v. Truscello*, 168 F.3d 61 (2d Cir. 1999), the Court developed a series of exceptions to this general rule for certain supervision conditions. In *Truscello*, the defendant argued that the district court had violated his right to be present at sentencing by including in the written judgment numerous supervised release conditions that had not been orally pronounced. *Id.* at 62. District Judge Casey, writing for this Court, rejected that argument.[6] Judge Casey noted that all the conditions added to the written judgment were labeled "standard" by the Sentencing Guidelines,

_____

[6] Pursuant to 28 U.S.C. § 46(b), *Truscello* was decided by a panel that included two district judges sitting by designation.

U.S.S.G. § 5D1.3(c). He therefore concluded that these conditions were "basic administrative requirement[s] essential to the functioning" of supervised release and "[i]mplicit in the very nature of supervised release." 168 F.3d at 62-63. Thus, the conditions' inclusion in the written judgment was just a "clarification of what the oral pronouncement meant by 'supervised release,'" and these "standard" conditions did not need to be separately orally pronounced. *Id.*

In later decisions, this Court expanded *Truscello*, repeatedly finding that different conditions could be included in a written judgment even if they had not been imposed at the sentencing hearing—steadily eroding a defendant's right to be present for the full imposition of his sentence. *See, e.g.*, *United States v. Thomas*, 299 F.3d 150, 153-54 (2d Cir. 2002) (holding that the district court was not required to pronounce "special" conditions requiring the disclosure of certain financial information and prohibiting new credit charges); *United States v. Asuncion-Pimental*, 290 F.3d 91, 93-95 (2d Cir. 2002) (extending *Truscello* to certain "special" conditions recommended in certain circumstances). "Initially, [this Court] permitted the later inclusion

of conditions listed as '[m]andatory' or 'standard' in subsections 5D1.3(a) and (c) of the Sentencing Guidelines. … We then extended *Truscello* to permit the later inclusion of conditions 'recommended' by subsection 5D1.3(d) of the Guidelines where the facts warranting such conditions are present." *United States v. Handakas*, 329 F.3d 115, 117 (2d Cir. 2003). Then, the Court "upheld the later inclusion of 'basic administrative requirement[s]' that are 'necessary to supervised release.'" *Id.*

In other words, following *Truscello*, the Court exempts from the ordinary oral pronouncement requirement (i) conditions that the Guidelines label "mandatory" or "standard"; (ii) some "special" conditions recommended by the Guidelines; and (iii) other conditions the Court deems, on an ad hoc basis, to be "basic administrative" requirements of supervised release. *See Washington*, 904 F.3d at 208. And Maiorana's case exemplifies the pernicious consequences of the *Truscello* line of cases: Judge Block's written judgment imposed a battery of conditions not listed in the PSR, not sought by the Government, and not recited (or even referenced) orally at sentencing. Thus, there was no way for the defendant or the public to know that these

conditions were being contemplated, let alone imposed, until the written judgment was issued.

**II.      This Court should overrule *Truscello* and abandon the exception it created to the oral pronouncement requirement for certain discretionary supervision conditions: district courts should be required to orally pronounce all non-mandatory conditions.**

**A.     Overruling *Truscello* would bring the Second Circuit in line with most other circuits, which require oral pronouncement of all non-mandatory conditions.**

This Court is an outlier when it comes to the oral pronouncement of supervised release conditions. Most courts of appeals require sentencing courts to orally pronounce any condition of supervised release that is not mandated by statute, regardless of how the Sentencing Guidelines characterize the condition. This is the law in the Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and District of Columbia Circuits. *See United States v. Rogers*, 961 F.3d 291, 297-98 (4th Cir. 2020); *United States v. Diggles*, 957 F.3d 551, 557-58 (5th Cir. 2020) (en banc); *United States v. Hayden*, 102 F.4th 368, 374 (6th Cir. 2024); *United States v. Anstice*, 930 F.3d 907, 910 (7th Cir. 2019); *United States v. Walker*, 80 F.4th 880, 882 (8th Cir. 2023); *United States v. Montoya*, 82 F.4th 640, 644-45 (9th Cir. 2023) (en banc); *United States*

*v. Geddes*, 71 F.4th 1206, 1215-16 (10th Cir. 2023); *United States v. Rodriguez*, 75 F.4th 1231, 1246 (11th Cir. 2023); *United States v. Matthews*, 54 F.4th 1, 5-6 (D.C. Cir. 2022).[7]

In adopting this requirement, several circuits have explicitly rejected *Truscello* and its progeny. *See Rogers*, 961 F.3d at 298-99; *Geddes*, 71 F.4th at 1215 n.4; *Matthews*, 54 F.4th at 5-6. Thus, overruling *Truscello* would end a conflict between this Circuit and most other federal appellate courts.

Moreover, as discussed throughout the next several sections, these circuits have offered persuasive reasons to require the oral pronouncement of all non-mandatory supervision conditions. First, these circuits distinguish between mandatory versus discretionary conditions because that is the

---

[7] No circuit appears to require oral imposition of mandatory conditions. *See, e.g.*, *Hayden*, 102 F.4th at 373. Circuits encourage oral pronouncement of all conditions, including mandatory conditions, as "sound and prudent." *Rogers*, 961 F.3d at 297; *Anstice*, 930 F.3d at 910. But because defendants have no ability to contest statutorily mandated conditions, circuits have held that due process does not require their imposition in defendants' presence. *See Hayden*, 102 F.4th at 373; *Montoya*, 82 F.4th at 649. With respect to oral pronouncement of non-mandatory conditions, it appears that only the First Circuit follows a rule similar to this Court's. *See United States v. Sepulveda-Contreras*, 466 F.3d 166, 169 (1st Cir. 2006).

distinction drawn by the supervised release statute, 18 U.S.C. § 3583(d). Circuits have reasoned that it makes sense to tie the oral pronouncement requirement to the supervised release statute, rather than to labels used by the advisory Sentencing Guidelines. Relatedly, and based on § 3583(d), other circuits have rejected *Truscello*'s claim that certain discretionary conditions are somehow implicit in a term of supervised release. And because these conditions are ultimately discretionary under the law, and may be contested by a defendant, due process requires that they be imposed in his presence.

Next, other circuits have found that a bright-line distinction between statutorily mandated conditions versus discretionary conditions is easier for courts to apply and provides greater clarity as to which conditions must be orally pronounced.

Finally, other circuits have recognized that this oral pronouncement requirement is not burdensome and that it encourages the individualized assessment sentencing courts are supposed to undertake before imposing any discretionary condition of supervised release.

**B. Requiring oral pronouncement of all discretionary conditions best accords with the requirements of 18 U.S.C. § 3583(d), and protects a defendant's due process rights.**

A requirement that sentencing courts orally impose all non-mandatory supervision conditions is grounded in the governing statute, 18 U.S.C. § 3583(d). The "supervised release statute draws a basic distinction between mandatory and discretionary conditions." *Matthews*, 54 F.4th at 4; *see also Hayden*, 102 F.4th at 371 ("Federal law divides supervised-release conditions into two types: mandatory or discretionary.").

Section 3583(d) enumerates a limited number of mandatory conditions that a district court "shall" order "as an explicit condition of supervised release," including not committing further crimes and not unlawfully possessing a controlled substance. The statute then provides that a district court "may" order other supervision conditions that are "reasonably related" to the relevant 18 U.S.C. § 3553(a) sentencing factors, "involve[] no greater deprivation of liberty than reasonably necessary," and are "consistent" with any pertinent Sentencing Commission policy statements. *See* 18 U.S.C. § 3583(d)(1)-(3).

In other words, beyond the few mandatory conditions listed in § 3583(d), any additional condition is purely discretionary. Under the statute, there are no "standard" or even "recommended" additional conditions. And to the extent that any additional condition is imposed, the statute requires a sentencing court to find that the condition involves "no greater deprivation of liberty" than necessary, based on "an individualized assessment" of the defendant. *See Matthews*, 54 F.4th at 6.

Thus, the statute itself contradicts this Court's suggestion in *Truscello* and its progeny that some discretionary conditions are "presumed suitable in all cases," *Asuncion-Pimental*, 290 F.3d at 94. As the D.C. Circuit recognized, "no matter how commonsensical the standard conditions may seem, the governing statute classifies them as discretionary .… And courts may impose discretionary conditions only after making an individualized assessment of whether they are 'reasonably related' to normal sentencing factors, … , and whether they involve 'no greater deprivation of liberty than is reasonably necessary.'" *Matthews*, 54 F.4th at 6; *see also Rogers*, 961 F.3d at 297-98 ("We therefore cannot assume that any set of discretionary

conditions—even those categorized as 'standard' by the Guidelines—will be applied to every defendant placed on supervised release, regardless of conduct or circumstances."); *Anstice*, 930 F.3d at 910 ("As commonplace and sensible as these [discretionary] conditions may be across federal sentences, Congress has not mandated their imposition.").

Under the statute, because even "standard conditions cannot be treated as legally or practically compelled by the imposition of any term of supervised release" and "the district court must consider whether they are warranted in the circumstances of each case," a court "must allow the defendant an opportunity to contest them, and must orally pronounce them at sentencing." *Matthews*, 54 F.4th at 6.

Other circuits track the reasoning of the D.C. Circuit. The Tenth Circuit holds: "For purposes of whether the conditions must be orally pronounced, the relevant distinction is between conditions mandated by the governing statute and those which are discretionary, even if the sentencing guidelines further subcategorize them as standard. … Section 3583 requires district courts to exercise discretion and make an individualized assessment for all

discretionary conditions, as does the sentencing guidelines. ... Thus, conditions which are discretionary under the statute cannot be deemed implicit in every term of supervised release." *Geddes*, 71 F.4th at 1215.

The Fourth Circuit concurs: "Either conditions are mandated by statute, or they are not. ... And if they are not ... then we cannot deem them 'implicit' in every oral sentence imposing a term of supervised release, no matter the particular circumstances, ... or assume that they merely 'clarify' the meaning of such sentences." *Rogers*, 961 F.3d at 299. "If we are to remain faithful to the statutory language, under which the imposition of *any* discretionary condition must be justified under the § 3583(d) factors, then we may not simply import discretionary conditions—no matter how sensible and routine—into oral sentences as a matter of course." *Id.*

The Fifth Circuit also agrees: "The scope of the [sentence] pronouncement requirement should correspond to the standard governing the presence right from which it flows." *Diggles*, 957 F.3d at 558. Section 3583(d) does not use the terms "standard" or "special"; instead, it "distinguishes between required and discretionary conditions." *Id.* "Having

the pronouncement requirement depend on whether a condition is discretionary under section 3583(d) is a bright-line rule that tracks the defendant's right to be present at sentencing" and "mirror[s] the statutory requirement for when a court must justify the conditions it imposes …." *Id.*

As these circuits also recognize, because even "standard" conditions are ultimately discretionary, these conditions must be imposed in the defendant's presence to adequately protect his due process rights. "Because district judges enjoy 'wide latitude' to impose non-mandatory conditions of supervised release, … the defendant has a due process right to be present to defend against them, …. Unless present when these conditions are pronounced, a defendant cannot 'dispute whether [the condition] is necessary or what form it should take.'" *Montoya*, 82 F.4th at 650. Oral pronouncement of all discretionary conditions thus "preserve[s] defendants' ability to avoid the imposition of unwarranted conditions" and protects defendants' "best chance to oppose supervised-release conditions that may cause them unique harms." *Rogers*, 961 F.3d at 298; *see also Rodriguez*, 75 F.4th at 1247 (finding oral pronouncement permits a defendant to object and argue

that "a particular condition is unreasonably onerous or does not apply to the defendant's individual circumstances").

**C.** ***Truscello* has proven difficult to administer, while a requirement to announce all non-mandatory conditions will be easy to follow and will help preserve appellate resources.**

A bright-line rule requiring pronouncement of all discretionary conditions is also easier for courts to apply. The judge-made exceptions coined in *Truscello* and its progeny have created a standard for oral pronouncement that has proven difficult to administer, and which has frequently required this Court to adjudicate whether a condition needs to be orally pronounced—with sometimes unpredictable and arbitrary-seeming results. *See Thomas*, 299 F.3d at 156 (acknowledging that, under this Court's precedents, "the line between" which conditions must be orally pronounced versus not "may be subtle").

Consider a few examples. Different panels have reached different conclusions as to whether courts must orally pronounce a condition requiring the defendant to disclose his financial information to Probation. *Compare United States v. Dodd*, 782 F. App'x 57, 59 (2d Cir. 2019) (summary

order) (finding no error in failing to pronounce condition requiring disclosure of financial information), *with United States v. Singh*, 726 F. App'x 845, 850 (2d Cir. 2018) (summary order) (stating financial disclosure obligation was justified on the record, but court "deprived [defendant] of his right to be present at sentencing by adding this condition after the fact and not articulating it at the sentencing hearing").

Courts do not need to orally pronounce a prohibition on opening new credit lines, but courts do need to pronounce a prohibition on possessing the identification of another. *See Thomas*, 299 F.3d at 153-54.

Courts do not need to orally pronounce conditions requiring a defendant convicted of a sex offense to submit to electronic monitoring of his internet-capable devices; to submit to internet activity restrictions; and to undergo sex offender treatment. *See United States v. Whitaker*, No. 21-1543, 2023 WL 5499363, at *4 (2d Cir. Aug. 25, 2023) (summary order) (finding no oral pronouncement necessary because these are "routine treatment and monitoring conditions for sex offenses"). But, if the sex offender treatment includes polygraph testing, a court does need to orally pronounce that. *See*

*Washington*, 904 F.3d at 208. And if an electronic monitoring and search condition is applied to non-sex offenders, the condition does need to be orally pronounced. *See United States v. Meadows*, No. 22-3155, 2025 WL 786380, at *5 (2d Cir. Mar. 12, 2025) (summary order).

This lack of clarity regarding which conditions need to be pronounced was a motivating factor in the Fifth Circuit's en banc decision in *Diggles*. The Fifth Circuit had previously applied a rule like this Court's, which required oral pronouncement of some "special" conditions, but not "standard" conditions. But as the Fifth Circuit recognized, "these lines are not so clear cut"; sometimes "special" conditions were actually "standard," and circuit law became "muddled" by focusing on Sentencing Guidelines labels that did not exist in the statute itself. *See Diggles*, 957 F.3d at 557-58. This led to "byzantine distinctions" "between standard, mandatory, standard-but-listed-in-the-judgment-as-special, 'true' special, and not-really-special conditions when it comes to pronouncement." *Id.* at 559. The circuit concluded, "[w]e can do better." *Id.* at 557.

So too can this Court. The existing lack of clarity in the Court's law can be easily resolved by adopting a bright-line rule requiring district courts to orally pronounce all non-mandatory supervision conditions.

### D. Oral pronouncement of all discretionary conditions will not be unduly burdensome.

An expanded oral pronouncement requirement would not impose any undue burden on sentencing courts. This Court recognized in *Thomas* that orally pronouncing supervision conditions is not particularly burdensome: courts can avoid future issues with conditions "rather easily" if they "take the time to state the defendant's sentence and to indicate the conditions that accompany it in open court and with appropriate precision." 299 F.3d at 156.

Nor would courts be required to read each imposed condition word-for-word at sentencing. If all proposed discretionary conditions are disclosed to a defendant in advance of the sentencing hearing—in the presentence report, a court order, or a district's standing order—then a court can impose discretionary conditions by clearly referencing one of these and

adopting the condition(s).[8] *See Matthews*, 54 F.4th at 6 n.2; *Hayden*, 102 F.4th at 374; *Montoya*, 82 F.4th at 651-52; *Diggles*, 957 F.3d at 560-62.

This Court should require more than a "general allusion," *Truscello*, 168 F.3d at 63, to discretionary conditions. At sentencing, the court should provide a defendant with the "requisite certainty," *United States v. Rosado*, 109 F.4th 120, 124 (2d Cir. 2024), as to which conditions are imposed and the conditions' particular requirements. But that can be accomplished by specific reference to conditions previously disclosed to the defendant in a presentence report or court order; it does not require a verbatim recitation of each condition at the hearing.

_____

[8] Districts within this Circuit already use each of these methods to disclose discretionary conditions. For example, the Southern District of New York Probation Department generally includes all proposed supervision conditions, including standard conditions, in a defendant's presentence report. Some judges issue orders with proposed conditions in advance of sentencing. And some districts have standing orders listing recommended standard conditions. *See* U.S. District Court for the Northern District of New York General Order #23 (Amended). Moreover, this Court has already urged district courts to disclose proposed conditions to defendants in advance of sentencing as a matter of course. *See United States v. Salazar*, No. 22-1385, 2023 WL 4363247, at *2 n.1 (2d Cir. July 6, 2023) (summary order).

**E. Announcing conditions at sentencing will ensure defendants are informed of their conditions; preserve the public's right to hear what sentences are being imposed; provide an opportunity for objections; and encourage sentencing courts to undertake the individualized assessment and tailoring required by statute.**

Finally, as other circuits have recognized, requiring oral pronouncement of all discretionary conditions has several salutary effects.

The expanded oral pronouncement of conditions better protects defendants' due process rights by providing notice of the full and complete terms of their sentence.

It also preserves the public's significant right, grounded in the First and Sixth Amendments, to be present to hear what sentences judges are imposing and why. *See, e.g., United States v. Lewis*, 424 F.3d 239, 248 (2d Cir. 2005) ("[T]he First Amendment guarantees of a public trial extend to defendants' sentencing proceedings."); *Alcantara*, 396 F.3d at 198 (discussing the importance of open and accessible sentencing proceedings). When judges pronounce and explain their sentences in open court—including conditions of supervised release—it promotes trust and confidence in the judicial process, while also allowing the public to debate the correctness of

those sentences and the laws that govern them. *See, e.g.*, *United States v. Cavera*, 550 F.3d 180, 193 (2d Cir. 2008) (en banc) (noting that imposing reasoned sentences in open court "helps to promote the perception of fair sentencing"); *Alcantara*, 396 F.3d at 98–99 ("[T]he ability to see the application of sentencing laws in person is important to an informed public debate over these laws").

Oral pronouncement also provides an opportunity for timely objections to conditions, allowing the parties and the district court to address any issues with proposed conditions.

This, in turn, should encourage sentencing courts to undertake the individualized assessment mandated by statute before imposing any discretionary condition of supervised release. Supervised release was never intended to be imposed on every defendant sentenced to prison; it was supposed to be reserved for a subset of defendants most in need of post-release supervision. *See Johnson*, 529 U.S. at 709. And when supervised release is imposed, § 3583(d) requires courts to consider a defendant's individual characteristics in deciding which, if any, discretionary conditions

are truly necessary. Courts are not supposed to mechanically impose a list of "boilerplate" additional supervision conditions in every case.

The rote imposition of a litany of discretionary conditions in every case does not foster either the rehabilitation of individual defendants or greater public safety. To the contrary, research suggests that numerous supervision conditions, even when well-intentioned, can actually inhibit individuals' successful reentry by "creat[ing] another layer of challenge to what is an already daunting situation." Christine S. Scott-Hayward, *The Failure of Parole: Rethinking the Role of the State in Reentry*, 41 N.M. L. Rev. 421, 422 (2011). Additional conditions often add to the burdens faced by supervisees and increase the likelihood of technical violations (and a revocation and return to prison), without meaningfully reducing the likelihood that the supervisee will commit a future crime. For example, studies published between 2010 and 2017 found that reducing the intensity of community supervision by imposing "fewer rules about how individuals must spend their time" and relaxing "enforcement of those rules" would maintain or improve public safety, because this generally has no impact on recidivism

rates, except that lower-intensity supervision reduces recidivism for some low-risk individuals. Jennifer L. Doleac, *Study after study shows ex-prisoners would be better off without intense supervision*, Brookings (July 2, 2018);[9] *see also* The Pew Charitable Trusts, *Probation and Parole Systems Marked by High Stakes, Missed Opportunities*, at 12 (2018)[10] ("Research has consistently shown that over-supervising low-risk individuals can do more harm than good by disrupting supportive elements of their lives, such as family, education, and employment, and mixing them in with people who are higher-risk."); Matt DeLisi, *et al.*, *Who Are the Compliant Correctional Clients? New Evidence on Protective Factors among Federal Supervised Releases*, 65 Int'l J. Offender Therapy and Comp. Criminology 1536 (2021) (finding that each additional supervision condition was associated with a 19% reduced likelihood of compliance with supervised release); Evangeline Lopoo, *et al.*, *How Little*

---

[9] Available at https://www.brookings.edu/articles/study-after-study-shows-ex-prisoners-would-be-better-off-without-intense-supervision.

[10] Available at https://www. https://www.pewtrusts.org/en/research-and-analysis/issue-briefs/2018/09/probation-and-parole-systems-marked-by-high-stakes-missed-opportunities.

*Supervision Can We Have?*, 6 Annual Review of Criminology 36 (2023) (summarizing studies concluding that "more intensive or longer supervision terms do not improve recidivism" and noting that community supervision "may be increasing incarceration rates"); Lucius Couloute, *The never-ending sentence: How parole and probation fuel mass incarceration*, The Conversation (Apr. 2, 2025)[11] (explaining how, "[i]nstead of helping people reintegrate, the [supervision] system enforces rules … which create new challenges for people trying to rebuild their lives after prison"). Put simply, the addition of more conditions can tend to undermine the rehabilitative goal of supervised release, while offering no attendant public safety benefit.

This is true for even the sort of "standard" conditions included in U.S.S.G. § 5D1.3(c), such as travel restrictions; full-time work requirements; the need to have any residence approved by a probation officer; prohibitions on associating with people with criminal records; mandatory consent to unannounced visits from a probation officer; and the need to notify

---

[11] Available at https://theconversation.com/the-never-ending-sentence-how-parole-and-probation-fuel-mass-incarceration-250578.

Probation regarding any police contact. *See, e.g.*, Emily Watson, *One Size Fits None: How 'standard conditions' of probation set people up to fail*, Prison Policy Initiative (Oct. 2024) (detailing burdens created by such "standard" conditions and how the conditions contribute to reincarceration);[12] Cecelia Klingele, *Rethinking the Use of Community Supervision*, 103 J. Crim. L. & Criminology 1015, 1061 (2013) (recommending courts never impose "boilerplate conditions" like this, which may "serve as an impediment to the successful completion of supervision"); Scott-Hayward, *supra*, at 448-50 (describing how such conditions can hinder supervisees' reintegration into their communities).

Of course, extensive release conditions can be beneficial in certain cases, and a rule requiring oral pronouncement never prevents a district court from imposing any appropriate condition, whether deemed "standard" or "special." But many of the discretionary conditions described in the Guidelines policy statements may not be appropriate for individual

---

[12] Available at https://www.prisonpolicy.org/reports/probation_conditions.html.

defendants for a variety of reasons. A rule requiring district courts to orally pronounce all discretionary supervised release conditions should foster greater consideration and tailoring of these conditions, as § 3538(d) requires. This, in turn, will increase a defendant's chances for success in the community and the overall efficacy of supervised release.

## CONCLUSION

This Court should overrule *Truscello* and hold that a sentencing court must orally pronounce any discretionary condition of supervised release imposed as part of a sentence.

Dated:      New York, New York
            April 18, 2025

                                      Respectfully submitted,
                                      Federal Defenders of New York, Inc.

                                      By: __/s/ Sarah Baumgartel_____
                                          Sarah Baumgartel, Esq.
                                          Edward S. Zas, Esq.
                                          52 Duane Street, 10th Floor
                                          New York, New York 10007
                                          Tel.: (212) 417-8772
                                          Sarah_Baumgartel@fd.org

## CERTIFICATE OF SERVICE

I certify that a copy of this brief has been served electronically on the United States Attorney/E.D.N.Y.; Attention: **ARTIE MCCONNELL, ESQ**., Assistant United States Attorney, 271 Cadman Plaza East, Brooklyn, NY 11201.

Dated:      New York, New York
            April 18, 2025

/s/ Sarah Baumgartel
**SARAH BAUMGARTEL**
Assistant Federal Defender

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32 because this brief contains 8,094 words, excluding the parts of the brief exempted by Fed. R. App. P. 32. This brief complies with the typeface and style requirements of Fed. R. App. P. 32 because this brief has been prepared in a monospaced typeface using Microsoft Word with 14 characters per inch in Palatino Linotype type style.

Dated:    New York, New York
          April 18, 2025


/s/ Sarah Baumgartel
**SARAH BAUMGARTEL**
Assistant Federal Defender