# 22-1115-cr

## United States Court of Appeals

### FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,
*Appellee,*

-vs-

BRIAN MAIORANA,
*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF OF AMICUS CURIAE FEDERAL DEFENDER'S OFFICE FOR THE DISTRICT OF CONNECTICUT IN SUPPORT OF DEFENDANT-APPELLANT BRIAN MAIORANA

TERENCE S. WARD
*Federal Defender*
10 Columbus Boulevard, 6th Floor
Hartford, CT 06106
(860) 493-6260

KELLY M. BARRETT
*First Assistant Federal Defender*
265 Church Street, Suite 702
New Haven, CT 06510
(203) 498-4200

CARLY LEVENSON
*Assistant Federal Defender*
265 Church Street, Suite 702
New Haven, CT 06510
(203) 498-4200

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... *ii*

INTRODUCTION ........................................................................ 1

PROCEDURAL POSTURE ............................................................. 2

ARGUMENT .............................................................................. 3

  I.   Oral pronouncement of non-mandatory conditions of supervised release ensures that those conditions are imposed only after a meaningful individualized assessment ........................................4

     A.   A sentencing court must conduct an individualized assessment before imposing non-mandatory conditions of supervised release ........5

     B.   Generally, sentencing courts have not conducted an individualized assessment before imposing the standard conditions .............................6

     **C.**   After-the-fact imposed conditions of supervised release necessarily lack the meaningful individualized assessment required ........................8

  II.  Re-incarceration instead of Rehabilitation: Violations of unpronounced conditions of supervised release carry significant consequences ...............9

  III. Experiences from the District of Connecticut offer a guide on how to ensure supervised release is administered as Congress intended it to be ........................................................................11

CONCLUSIONS ........................................................................14

CERTIFICATIONS

# TABLE OF AUTHORITIES

**Cases**

*Dean v. United States*,
    581 U.S. 62 (2017)......................................................................... 5

*Johnson v. United States*,
    529 U.S. 694 (2000)...................................................................... 11

*United States v. Bowers*,
    No. 3-22-CR-67 (SRU) (D. Conn. 2025) ................................... 13

*United States v. Castro*,
    No. 3:18-cr-284 (SRU) (D. Conn. 2025).................................... 13

*United States v. Jackson,*
    No. 3:23-CR-65 (SRU) (D. Conn. 2025)..................................... 13

*United States v. Robinson*,
    134 F.4th 104 (2d Cir. 2025) ..................................................... 3-4

*United States v. Rosado*,
    109 F.4th 120 (2d Cir. 2024) ....................................................... 3

*United States v. Sims*,
    92 F.4th 115 (2d Cir. 2024) ..................................................... 3, 4

*United States v. Thomas*,
    299 F.3d 150 (2d Cir. 2002) ................................................... 4, 14

*United States v. Truscello*,
    168 F.3d 61 (2d Cir. 1999) ............................................... *passim*

**Statutes**

18 U.S.C. § 922...............................................................................2

18 U.S.C. § 3553.............................................................................5

18 U.S.C. §§ 3583 ............................................................................. *passim*

**Other Authorities**

U.S.S.G. § 5D1.3(c) .............................................................................4, 6, 13

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

DOCKET NO. 22-1115-cr

UNITED STATES OF AMERICA,

Appellee,

-vs-

BRIAN MAIORANA

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

_____

**BRIEF OF AMICUS CURIAE FEDERAL DEFENDER'S OFFICE FOR
THE DISTRICT OF CONNECTICUT IN SUPPORT OF DEFENDANT-
APPELLANT BRIAN MAIORANA**

_____

# INTRODUCTION

In these *en banc* proceedings, the Court is deciding whether sentencing courts must orally pronounce all non-mandatory conditions of supervised release at sentencing. As the organization entrusted with representing the interests of indigent defendants in the District of Connecticut, the Federal Defender's Office, as Amicus Curiae, urges the Court to hold that sentencing courts are so required.[1]

Amicus has been proactive in ensuring that in the District of Connecticut, conditions of supervised release are tailored, and that only conditions that involve "no greater deprivation of liberty than is reasonably necessary" to serve the purposes of deterrence, public safety, and rehabilitation, are imposed. *See* 18 U.S.C. §§ 3583(c)–(d). This goal is furthered by requiring sentencing courts to orally pronounce the non-mandatory conditions of supervised release they intend to impose. Doing so would encourage a meaningful engagement about the appropriateness of those conditions. It would also provide an opportunity for counsel and for the individual being sentenced to seek clarification of conditions imposed, challenge those conditions, or suggest more tailored substitutes for the sentencing court's consideration.

---

[1] Pursuant to Rule 29(a)(4)(E) of the Federal Rules of Appellate Procedure, Amicus declares that this brief was not authored in whole or in part by counsel for any party and that no person, whether a party or otherwise, contributed money for the purposes of preparing this brief. Counsel for the parties have been consulted; no party objects to the filing of this brief.

Under this Court's *Truscello* precedent*,* a sentencing court need not, on the record, engage in such individualized assessment, and could instead impose non-mandatory conditions after the fact in a criminal judgment. That is fundamentally unfair because, among other reasons, it results in the imposition of conditions of supervised release that are not tailored. It is Amicus's experience that oral pronouncement of non-mandatory conditions helps focus everyone's attention on those conditions and thereby foster a meaningful engagement to ensure that any conditions imposed meet the statutory mandates of § 3583(c) and (d).

Accordingly, Amicus joins Mr. Maiorana in respectfully requesting that the *en banc* Court overrule *Truscello* and hold that all discretionary conditions of supervised release must be orally pronounced at sentencing.

## PROCEDURAL POSTURE[2]

In April 2021, Brian Maiorana pled guilty to unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He appeared for sentencing before the district court, (Block, J., E.D.N.Y.), in May 2022. During that proceeding, the court imposed 36 months' imprisonment to be followed by three years of supervised release. The court discussed various "special conditions" of

---

[2] The facts contained herein were derived from the district court and this Court's dockets and the parties' appendices, which they submitted in connection with the initial briefing.

supervised release that it intended to, and did ultimately, impose. The court additionally stated it would impose "general conditions of supervised release as well." The court, however, did not identify those conditions. Thereafter, the court issued a written judgment listing thirteen conditions, none of which the court had pronounced during the sentencing proceedings. Mr. Maiorana timely appealed.

On March 21, 2025, after a panel heard oral arguments in this appeal, the Court ordered rehearing *en banc*. The Court invited the parties and amicus curiae to address whether it "should overrule *United States v. Truscello*, 168 F.3d 61 (2d Cir. 1999), and hold that a defendant must be specifically notified, at the sentencing proceeding, in his presence, of all non-mandatory conditions of supervised release imposed as part of a criminal sentence."

## ARGUMENT

"Sentencing," this Court has explained, "is a heavy task." *United States v. Sims*, 92 F.4th 115, 120 (2d Cir. 2024). An integral component of that "heavy task," is "the requirement that a district court pronounce a sentence—including the conditions of supervised release—in the presence of a defendant." *United States v. Rosado*, 109 F.4th 120, 126 (2d Cir. 2024). This pronouncement in open court serves many purposes. For one, it vindicates the sentenced individual's constitutional and statutory "right to be present during sentencing." *United*

*States v. Robinson*, 134 F.4th 104, 109 (2d Cir. 2025) (quotation marks omitted). For another, it demonstrates to the sentenced individual—and to the public—that the sentencing court "carefully balance[d] the goals of supervised release while remaining mindful of the life-altering effects their judgments have on defendants, their families, and their communities." *Sims*, 92 F.4th at 120.

Most practically, an oral pronouncement of a sentence "serves the salutary function of insuring that a defendant fully understands the contours of his punishment at a time when any questions he or his lawyer may have can be explored and resolved in person." *United States v. Thomas*, 299 F.3d 150, 156 (2d Cir. 2002). Over the last twenty-five years, however, this Court's *Truscello* decision has undermined this "salutary function." The *en banc* Court should therefore overrule *Truscello* to prevent the further erosion of the oral pronouncement requirement.

**I.     Oral pronouncement of non-mandatory conditions of supervised release ensures that those conditions are imposed only after a meaningful individualized assessment.**

The Sentencing Guidelines list thirteen conditions of supervised release under the heading "standard conditions." *See* U.S.S.G. 5D1.3(c)(1)–(13). Although the Guidelines note that these "standard conditions" are "*recommended* for supervised release," *id.* (emphasis added), "they are almost uniformly imposed by the district courts and have become boilerplate,"

*Truscello*, 168 F.3d at 63. In treating the standard conditions as "boilerplate," sentencing courts fail to meet the statutory requirements that conditions of supervised release be tailored and not greater than necessary.

A. <u>A sentencing court must conduct an individualized assessment before imposing non-mandatory conditions of supervised release.</u>

Section 3583 of Title 18 of the United States Code guides a sentencing court's determination of whether to impose a term of supervised release; and if one is imposed, how long the term should last, and what conditions should be imposed. In particular, § 3583(c) requires a sentencing court to "consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." In pointing to § 3553(a), Congress directed judges to consider the "parsimony principle,"—that is, the "broad command that instructs courts to 'impose a sentence sufficient, but not greater than necessary,'" *Dean v. United States*, 581 U.S. 62, 67 (2017) (quoting 18 U.S.C. § 3553(a))—before imposing a term of supervised release and its accompanying conditions. Section 3583(d) additionally instructs sentencing courts that any non-mandatory conditions of supervised release they impose should "involve[] no greater deprivation of liberty than is reasonably necessary" to serve the purposes of deterrence, public safety, and rehabilitation. 18 U.S.C § 3583(d).

Read together, 18 U.S.C. §§ 3583(c) & (d), require sentencing courts to ensure that any term of supervised release be "sufficient, but not greater than

necessary," and that conditions accompanying such a term "involve[] no greater deprivation of liberty than is reasonably necessary" to serve the purposes of deterrence, public safety, and rehabilitation. To meet these statutory requirements, a sentencing court must necessarily conduct an individualized assessment of the person being sentenced before it imposes conditions of supervised release. That assessment culminates with the sentencing proceeding where the individual is present.

It is during this proceeding that the sentencing court could explain its individualized assessment that underpins the sentence—including a term of supervised release and its accompanying conditions—it intends to impose. An oral pronouncement of the conditions ultimately imposed helps focus attention on those and thus give the individual being sentenced (and their counsel) the opportunity to question, challenge, or seek clarification of those conditions.

B. Generally, sentencing courts have not conducted an individualized assessment before imposing the standard conditions.

Available data suggests that, as a general matter, sentencing courts have not been conducting individualized assessments before imposing standard conditions of supervised release.[3] In fiscal year 2023, nearly 90% of individuals who received a federal criminal sentence also received a term of supervised

---

[3] *See* U.S.S.G. § 5D1.3(c) (listing thirteen conditions of supervised release which are known as the "standard conditions").

release. This means 52,907 of the 59,268 individuals who received a prison sentence in fiscal year 2023 also received a term of supervised release.[4] Although sentencing courts are instructed to conduct an "individualized assessment," such assessments, if they are occurring, have not resulted in variation of the standard conditions of supervised release that are imposed.

The Arthur Liman Center for Public Interest Law at Yale Law School conducted a study on the use of standard conditions of supervised release in the District of Connecticut. As part of that study, the Liman Center analyzed 74 criminal judgments entered in the District of Connecticut during fiscal year 2023, which spanned calendar year 2022 and 2023. Of the 74 criminal judgments, 66 included a term of supervised release. And for each of those 66 criminal judgments, sentencing judges imposed the District of Connecticut's entire list of standard conditions.

The Liman report suggests that rather than tailoring non-mandatory conditions of supervised release, historically many sentencing courts reflexively imposed the entire list without regard to whether all of the conditions are necessary in a particular case. A requirement that a sentencing court orally pronounce non-mandatory conditions of supervised release would break this

_____

[4] The data used for these analyses were extracted from the U.S. Sentencing Commission's "Individual Datafiles" for fiscal year 2023. *See* U.S. SENT'G COMM'N, *2023 Sourcebook of Federal Sentencing Statistics*, tbls. 13, 18 (2024).

unwarranted uniformity and encourage sentencing courts to tailor the conditions they impose.

    C. <u>After-the-fact imposed conditions of supervised release necessarily lack the meaningful individualized assessment required</u>.

Under this Court's *Truscello* precedent, a sentencing court may, after having imposed a sentence in open court, issue a criminal judgment that includes conditions of supervised release that the court did not mention during sentencing. By imposing the unpronounced conditions, the sentencing court conducts an after-the-fact assessment in which the defendant has no role and is thus unable to provide the court information that may be relevant to the court's consideration. This approach treats conditions of supervised release as an afterthought. But as explained *infra*, violations of these conditions carry significant consequences for the sentenced individuals and their families. Indeed, in a 2020 study, the United States Sentencing Commission found that 86% of individual found guilty of violating their conditions of supervised release received a prison sentence.[5] In light of these severe consequences, sentencing courts should ensure that both sentenced individuals and the public are aware of the conditions that would lead

---

[5] U.S. SENT'G COMM'N, *Federal Probation and Supervised Release Violations*, 34 (2020), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2020/20200728_Violations.pdf (last visited May 14, 2025) (stating that 78.7% of individuals found guilty of violating their conditions of supervised release are sentenced to prison, and an additional 7.4% received prison sentence and "alternatives").

to reimprisonment. They can do so by pronouncing those conditions in open court.

In sum, requiring sentencing courts to orally pronounce non-mandatory conditions of supervised release would serve twin aims: ensuring that any condition imposed is a result of an individualized assessment and enhancing public confidence in federal criminal sentencing. Because *Truscello* stands in the way of these twin aims, this *en banc* Court should overrule it.

## II. Re-incarceration instead of Rehabilitation: Violations of unpronounced conditions of supervised release carry significant consequences.

Congress intended for supervised release to be principally rehabilitative. *See* Stefan R. Underhill, *Supervised Release Needs Rehabilitation*, 10 VA. J. CRIM. L. 1 (2024) ("*SR Needs Rehab*"). The legislative history of the Sentencing Reform Act of 1984, which established the concept of supervised release, demonstrates that Congress intended supervised release to focus on rehabilitation. Indeed, the 1983 Senate Report states that the "primary goal" of the newly created concept of supervised release was "to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still

needs supervision and training programs after release." Comm. on the Judiciary, Comprehensive Crime Control Act of 1983, S. Rep. No. 98-225, at 124 (1983).

In practice, however, supervised release has become a revolving door of reincarceration.[6] "[O]ver the past decade, revocations of supervised release have sent an estimated 100,000 or more former federal prisoners back to prison, principally for technical violations rather than for true recidivism." *SR Needs Rehab* at 3. These "technical violations" include violations of the standard conditions of supervised release, which sentencing courts in this Circuit are not required to orally pronounce at sentencing. In light of the significant consequences that result from violations of conditions of supervised release, at the very least, sentencing courts should be required to—in open court—inform individuals of the conditions which may lead to their re-incarceration. As

---

[6] *See generally, e.g.*, Stefan R. Underhill & Grace E. Powell, *Expedient Imprisonment: How Federal Supervised Release Sentences Violate the Constitution*, 108 Va. L. Rev. Online 297 (2022); Joseph A. DaGrossa, Dissertation, The Incapacitation and Specific Deterrent Effects of Responses to Technical Non-Compliance of Offenders Under Supervision: Analysis From a Sample of Federal Judicial Districts, at 149 (2018) (noting that supervision, as it currently exists, bears little resemblance to its historical mission of aiding individuals' adjustment to the community, focusing instead on "frequent drug testing, the administration of polygraph tests, and increased searches of [individuals'] person and residence" (citing Todd R. Clear & Natasha A. Frost, The Punishment Imperative 122 (2014))); James Bonta et al., *Exploring the Black Box of Community Supervision*, 47 J. Offender Rehab. 248 (2008) (conducting a detailed examination of taped interviews between probation officers and their supervisees and concluding that probation officers spent too much time on the enforcement aspect of supervision and not enough time on the service delivery aspect).

explained *infra*, Amicus's experience in the District of Connecticut provides a guide to a way forward.

**III.   Experiences from the District of Connecticut offer a guide on how to ensure supervised release is administered as Congress intended it to be.**

The District of Connecticut has the lowest rate of violations of supervised release in the country.[7] That is not a coincidence. As the organization entrusted with representing the interests of indigent defendants in the District of Connecticut, Amicus has been proactive in ensuring supervised release operates as Congress intended that it does, meaning supervised release is reserved "for those, and only those, who need[] it." *Johnson v. United States*, 529 U.S. 694, 709 (2000).

To that end, over the years, Amicus has engaged in a concerted effort to ensure individuals who have done well on supervised release seek and obtain early termination of their supervision under 18 U.S.C. § 3583(e)(1).[8] Since January 2023, Amicus has filed 131 motions for early termination of supervised release. Of those, 86% were granted, eight percent are currently pending and only six percent were denied.

---

[7] *See* U.S. SENT'G COMM'N, *Federal Probation and Supervised Release Violations* at 18.
[8] 18 U.S.C. § 3583(e)(1) provides that a court may, after considering certain factors, "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."

Building on this work, Amicus more recently began focusing on the imposition of conditions of supervised release. As the Liman Report exposed, judges in the District of Connecticut routinely imposed all of the standard conditions of supervised release. To Amicus, this uniformity suggested sentencing court did generally conduct an individualized assessment before imposing those conditions. Amicus has now begun to address this issue head on.

To start, in their sentencing memoranda, Assistant Federal Defenders ("AFDs") in the District of Connecticut reiterate the need for individualized assessment not only with respect to any contemplated carceral sentence, but also with respect to non-mandatory conditions of supervised release. AFDs then urge sentencing judges to impose only conditions that are reasonably related to the crime of conviction and those that involve no greater deprivation of liberty than necessary. At sentencing, AFDs engage with sentencing judges regarding which conditions are appropriate, raise objections, and suggest alternative conditions which would comport with the statutory requirements. *See* 18 U.S.C. § 3583(d). This process has recently led to a more engaged and meaningful individualized assessment before the imposition of non-mandatory conditions of supervised release.

Take, for example, the standard condition of supervised released commonly referred as the "Travel Condition." That condition reads: "The

defendant shall not knowingly leave the federal judicial district where he or she is authorized to reside without first getting permission from the court or the probation officer." *See* U.S.S.G. 5D1.3(c)(3). In many cases, the Travel Condition is not reasonably related to the crime of conviction and involves greater deprivation of liberty than is reasonably necessary. As a result, AFDs now routinely request that sentencing judges not impose the Travel Condition, unless an individualized assessment reveals its imposition is warranted.[9] In Amicus's experience, often the government does not object to excluding the Travel Condition.[10]

Ensuring a meaningful engagement with sentencing courts with respect to conditions of supervised release will likely contribute to lower rates of violations of those conditions. True, it may take some additional time for sentencing judges to conduct an individualized assessment and to orally pronounce non-mandatory

---

[9] The Honorable Stefan R. Underhill has determined that, in most cases, six of the thirteen standard conditions are not to be used, and seven are often appropriate in many cases. *See United States v. Jackson,* No. 3:23-CR-65 (SRU), ECF No. 64 (D. Conn. Jan. 9, 2025) (imposing only conditions (1), (2) (4), (5), (6), (7), and (13) of the standard conditions); *United States v. James Bowers*, No. 3:22-CR-67 (SRU), ECF No. 114 (D. Conn. Jan. 30, 2025) (excluding the travel and felony association restriction conditions).

[10] Another recent development in the District of Connecticut is the review of conditions of supervised release after the individual is released from prison. Often, individuals begin serving their term of supervised release many years after its imposition. As a result, the conditions initially imposed may no longer be pertinent. To address this concern, Judge Underhill has begun holding a hearing after the individual is released to review the conditions imposed and make modifications, as needed, pursuant to 18 U.S.C. § 3583(e)(2). *See, e.g.*, *United States v. Luis Castro*, No. 3:18-cr-00284(SRU), ECF No. 237 (D. Conn. Mar. 30, 2025) (modifying standard conditions of release following a post-release review hearing).

conditions. But as the Court has observed, "requiring district courts to make clear during the sentencing hearing exactly which conditions of release it intends to impose adds only minimally to [the courts'] responsibilities." *Thomas*, 299 F.3d at 156. Moreover, ultimately, judicial economy is better served by imposing conditions that are tailored and not greater than necessary. The result is less time spent adjudicating violations of conditions that may or may not have been necessary in the first instance.

In sum, while the administration of supervised release has not been without flaws in the District Connect, there continues to be a concerted effort by all involved to ensure conditions of supervised release are tailored and are imposed only after an individualized assessment is conducted.

## CONCLUSION

For the reasons above and for the reasons provided by the Defendant-Appellant, Amicus respectfully requests that the *en banc* Court overrule *Truscello*, and hold that all discretionary conditions of supervised release must be orally pronounced at sentencing.

Respectfully Submitted,

AMICUS CURIAE
TERENCE S. WARD
FEDERAL DEFENDER
DISTRICT OF CONNECTICUT

Date: May 16, 2025

*/s/ Kelly M. Barrett*
First Assistant Federal Defender

*/s/ Carly Levenson*
Assistant Federal Defender

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 16, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Kelly M. Barrett*
Kelly M. Barrett

# CERTIFICATE PER FED. R. APP. P 29(d), 32(a)(6), 32(a)(7)(C)

This is to certify that the foregoing brief complies with the 7,000-word limitation requirement of Fed. R. App. P. 29(d) and 32(a)(7)(C) in that the brief is calculated by the word processing program to contain approximately 3,221 words, exclusive of the Table of Contents and Table of Authorities.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman.

*/s/ Kelly M. Barrett*
Kelly M. Barrett